986 A.2d 1234 (2009)
R.M.G., JR., Appellant
v.
F.M.G., Appellee.
No. 908 WDA 2009
Superior Court of Pennsylvania.
Submitted September 21, 2009.
Filed December 16, 2009.
*1235 James J. Geibig, Greensburg, for appellant.
Maureen S. Kroll, North Huntingdon, for appellee.
BEFORE: MUSMANNO, BENDER and CLELAND, JJ.
OPINION BY CLELAND, J.:
¶ 1 R.M.G., Jr. ("Father") appeals from the order entered on May 4, 2009 following a hearing on the petition filed by F.M.G. ("Mother") to modify custody of their two children, S.G. (d.o.b. 2/13/99) and Z.G. (d.o.b. 10/23/00) (collectively "the Children"). Father complains the trial court erred by modifying a May 2008 custody arrangement because Mother did not demonstrate a material change in circumstances. Father also argues the trial court erred or abused its discretion by finding a changed custody arrangement would serve the best interests of the Children. Because a material change in circumstances is not a prerequisite to modification and because we find no abuse of discretion in the trial court's modification of the May 2008 arrangement, we affirm.
¶ 2 The trial court provided the following background information:
[Mother] and [Father] were married in April of 2000 and divorced four years later in 2004. There were two children born of the marriage between [Father] and [Mother], those being [S.G.] and [Z.G.]. After the separation of mother and father, father took up residence in Youngwood, which is located in Westmoreland County, and mother took up residence in Ruffs Dale, which is located a few miles from Youngwood. Prior to the parties['] separation the children attended the Hempfield Area School District and at the time of the separation it was agreed by mother that the children should remain with father in order to complete the school year in the Hempfield Area School District.
Subsequently, mother and father were scheduled for a custody hearing before Master Bruce Tobin in order to determine the appropriate custody arrangements for [the Children].
Even though both parties were represented by attorneys at that point in time,[1] the parties appeared before Master Tobin without counsel and reached an agreement whereby father would retain primary physical custody of the children *1236 and mother would permit father to relocate with the children to Altoona in order that he could take up residence with his newly found girlfriend, [C.M.]. Mother at this point in time was living with a gentleman by the name of [M.H.]. Also it should be noted that the parties during the relevant time frames became divorced.
Mother had a previous child to another man and that child's name was [J.S.] and while living with [M.H.], mother had another child named [C.H.]. Both [J.S.] and [C.H.] were siblings of [S.G.] and [Z.G.]. ...
The agreement reached between the parties allowing the father to relocate to Altoona to live with his girlfriend, [C.M.], was uncounseled by either party.
The essence of the agreement was that father would be permitted to move to Altoona and that mother would have periods of partial custody every other weekend with the children and periods of time with the children during the summer.
Trial Court Opinion, 6/24/09, at 2-3 (footnote added). The agreement was memorialized in a custody consent order entered on May 2, 2008.[2]
¶ 3 Mother filed a petition to modify the May 2008 agreement, seeking enlarged periods of physical custody. Following a hearing conducted on April 23 and May 1, 2009, the trial court issued findings of fact and an order by which Mother and Father continued to share physical and legal custody of the Children. However, the order granted increased periods of physical custody to Mother. The order decreased Father's periods of custody but increased Father's transportation obligations. Father filed this timely appeal. Both Father and the trial court complied with Pa.R.A.P. 1925.
¶ 4 Father presents six issues for our consideration:
I. Whether the Trial Court erred and abused its discretion in concluding that [Mother], in seeking to modify the parties' existing Custody Order dated May 2, 2008, met her burden in demonstrating that a substantial change in circumstances existed to justify the trial Court's reconsideration of the custody disposition?
II. Whether the trial court erred and abused its discretion in finding that the best interest and welfare of the minor children is served by its award of shared physical and legal custody of said minor children to [Mother], as set forth in its Order of Court dated May 1, 2009?
III. Whether the Trial Court erred and abused its discretion in failing to find that the best interest and welfare of the minor children is served by entering an Order confirming the status quo custodial arrangement that has been followed by the parties since the entry of the previous Order of Court dated May 2, 2008, with an award of primary physical custody of the minor children to [Father], and periods of partial physical custody of the minor children to [Mother], on alternate weekends throughout the calendar year?
IV. Whether the Trial Court erred and abused its discretion in failing to give positive consideration to [Father], who has acted as the minor children's primary caretaker in rendering its award of shared physical custody of the minor children to [Mother]?

*1237 V. Whether the Trial Court erred and abused its discretion in entering an Order requiring [Father] to bear the majority responsibility of transporting the minor children to and from New Alexandria, PA for custody exchanges without requiring [Mother] to share in said transportation task?
VI. Whether the Trial Court erred and abused its discretion in failing to transfer venue/jurisdiction of the within Custody action to the Court of Common Pleas of Blair County, Pennsylvania?
Father's Brief at 5-6.
¶ 5 Our scope and standard of review of a custody order are as follows:
[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. ... However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.
Bovard v. Baker, 775 A.2d 835, 838 (Pa.Super.2001) (quoting Kaneski v. Kaneski, 413 Pa.Super. 173, 604 A.2d 1075, 1077 (1992)). "Further, as we have stated many times before, the paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual wellbeing." Id. at 838-39 (citations and quotations omitted).
¶ 6 "[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." Billhime v. Billhime, 869 A.2d 1031, 1036 (Pa.Super.2005) (citation omitted).
The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.
S.M. v. J.M., 811 A.2d 621, 623 (Pa.Super.2002) (quoting Robinson v. Robinson, 538 Pa. 52, 57, 645 A.2d 836, 838 (1994)).
¶ 7 We first note the trial court issued findings of fact. Our review confirms that those findings are supported by the record. Our role, then, is to determine only whether the trial court's consideration of the best interest of the Children was careful and thorough, and whether we are able to find any abuse of discretion in the trial court's conclusions.
¶ 8 Our reading of the trial court's conclusions announced from the bench (see N.T., 5/1/09, at 35-44) in conjunction with the trial court's opinion confirms that the trial court thoroughly and thoughtfully considered the best interests of the children. Nevertheless, while we find no abuse of discretion warranting our reversal of the trial court's order, we are compelled to note our disagreement with the legal analysis undertaken by the trial court in conjunction with its factual findings. In particular, we find the trial court placed undue weight on Ferdinand v. Ferdinand[3] *1238 and improperly applied a Gruber[4] test in the course of its analysis.
¶ 9 Again, the trial court correctly recognized its obligation "to do what is in the children's best interest," Trial Court Opinion, 6/24/09, at 6. The trial court then discussed factors considered in reaching its decision to modify the May 2008 custody order. The trial court explained:
The first thing that this Court is required to consider is whether or not we should separate [S.G.] and [Z.G.] from their siblings [J.S.] and [C.H.]. ... As a result of this [c]ourt's reading of the Ferdinand case, this [c]ourt concluded that as a general rule in Pennsylvania, we do not separate siblings unless there are compelling circumstances in the case to allow that to occur. ... [T]his [c]ourt is very concerned about maintaining a strong ongoing relationship between the siblings. ...
Id. at 6-8. However, Ferdinand is inapposite and the trial court's reliance on it is misplaced.
¶ 10 In Ferdinand, the mother of two children, who were fathered by different men, sought to relocate to Michigan with a third man. The fathers opposed the mother's relocation and each sought primary custody of his respective child. The trial court denied the mother's petition and awarded custody to the children's respective fathers. On appeal, this Court conducted a Gruber analysis and reversed, finding inter alia the trial court erred by failing to consider the impact of separating the siblings and reiterating "the policy of this Commonwealth ... that siblings should be raised together whenever possible" absent compelling reasons to the contrary. Ferdinand, 763 A.2d at 823-24.
¶ 11 Unlike Ferdinand, where the trial court ordered separation of half-siblings who had resided together with their mother, the present case involves two siblings who were already residing apart from their two half-siblings (who are half-siblings to each other) as a result of a consent custody order agreed to between Father and Mother. Also, unlike Gruber, where this Court considered factors to be weighed in conjunction with a parent's request to relocate with children, we are faced with a situation where Mother already agreed to Father's relocation with the Children. Under the circumstances, neither Ferdinand nor Gruber is applicable.
¶ 12 Using that conclusion as a starting point and recognizing this Court can affirm a trial court's ruling on any basis,[5] we turn to the issues Father asks us to consider. In his first issue, Father asserts the trial court erred and abused its discretion by granting modification of an existing custody order in the absence of a substantial change in circumstances. In support of his position, Father cites Gianvito *1239 v. Gianvito, 975 A.2d 1164 (Pa.Super.2009), which in turn cites Kozlowski v. Kozlowski, 362 Pa.Super. 516, 524 A.2d 995 (1987), for the proposition advanced by Father. However, there has been no "substantial change" required in Pennsylvania since 1988 when our Supreme Court specifically pronounced that no substantial changed circumstance was required to modify a custody order under the statutory provisions of the Custody and Grandparents' Visitation Act, 23 Pa.C.S.A. § 5301 et seq. See Karis v. Karis, 518 Pa. 601, 607-08, 544 A.2d 1328, 1332 (1988) ("[W]e hold that a petition for modification of a partial custody to shared custody order requires the court to inquire into the best interest of the child regardless of whether a `substantial' change in circumstances has been shown.") Because substantial change is not a prerequisite to modifying a custody order, Father's first issue fails.
¶ 13 In his next three issues, Father challenges the trial court's order with respect to the "best interest of the children" analysis, especially in light of his role as primary caretaker. While, as noted above, changed circumstances are not required for modification of custody, this Court has recognized changed circumstances, or a lack thereof, can be a relevant springboard into a best interest analysis. In Hutchinson v. Hutchinson, 379 Pa.Super. 247, 549 A.2d 999 (1988), this Court announced, "Best interest cannot be considered in a vacuum and were the circumstances unchanged from those that resulted in the initial custody arrangement, it must be presumed that what was in the child's best interest continues." Id. at 1001.
¶ 14 The trial court's findings of fact disclose no significant changed circumstances since the parties entered into the May 2008 custody arrangement. It is clear from the record and the trial court's findings of fact that Mother and Father were then and still are good parents who love the Children and "[i]t must be presumed that what was in the child's best interest continues." Id. However, this is not to say nothing is different from May 2008. At the April 23, 2009 hearing, the Children did express their desire to spend more time with Mother, see N.T., 4/23/09, at 87-89; 101-03, and the trial court acknowledged their request, see N.T., 5/1/09, at 39-40 and 43. Clearly, this is a factor properly considered by the trial court, even if not determinative by itself. As this Court has recognized:
The significance placed on the preference of the child who is at the center of the custody dispute is similarly within the discretion of the trial judge. We have held that:
Although the express wishes of a child are not controlling in custody decisions, such wishes do constitute an important factor that must be carefully considered in determining the child's best interest. The weight to be attributed to a child's testimony can best be determined by the judge before whom the child appears. The child's preference must be based upon good reasons and his or her maturity and intelligence must also be considered.
Masser v. Miller, 913 A.2d 912, 920 (Pa.Super.2006) (quoting Ketterer v. Seifert, 902 A.2d 533, 540 (Pa.Super.2006)).
¶ 15 Father also argues the trial court failed to consider his role as primary caretaker. See Father's Brief at 5-6 (Issue IV). In Masser, this Court noted:
One substantial factor in determining if a modification of a custody order is in the child's best interest, although not the sole factor, "is the role that one parent has assumed as the primary caretaker of the child." [Johns v. Cioci, *1240 865 A.2d 931, 937 (Pa.Super.2004)] (citation omitted). "[W]hen both parents are otherwise fit, one parent's role as the primary caretaker may be given weight as the determining factor in a custody determination." Wheeler v. Mazur, 793 A.2d 929, 935 (Pa.Super.2002) (citation omitted). However, "[t]he court must give attention to the benefits of continuity and stability in custody arrangements and to the possibility of harm arising from disruption of longstanding patterns of care." Johns, 865 A.2d at 937.
Id. at 922.
¶ 16 Here, the trial court did not explicitly address Father's role as primary caretaker. However, by denying Mother's request to become the primary caretaker, the trial court implicitly acknowledged Father's caretaker role, giving attention to the continuity and stability in the custody arrangements in place during the school year and declining to disrupt the Children's continued attendance at the school where the Children have done very well since moving with Father to Altoona.
¶ 17 Therefore, while we believe the trial court embarked upon a path it should not have traveled by engaging in a Ferdinand sibling analysis and a Gruber relocation analysis when neither was warranted, we cannot say the trial court committed an abuse of discretion by shifting physical custody to Mother on three out of every four weekends compared to every other weekend under the May 2008 order, or by increasing the time spent with Mother during the summer. Father's second through fourth issues, all of which are centered on the best interest of the Children, fail to provide any basis for relief.
¶ 18 In his fifth issue, Father asserts the trial court erred and abused its discretion by requiring Father to bear the bulk of transportation duties. While the trial court did not offer, and we cannot discern, any rationale for its decision to move the meeting point from a location midway between the parties' homes to a site requiring Father to drive a greater distance, we cannot say that the trial court's ruling in that regard rises to the level of an abuse of discretion. Therefore, we shall not disturb the trial court's ruling in that regard.
¶ 19 In this sixth and final issue, Father complains the trial court erred by "failing to transfer venue/jurisdiction" to Blair County where he resides. Father's Brief at 6 (Issue VI). As to the transfer of venue, pursuant to Pa.R.C.P. 1915(c), a trial court may transfer an action to the appropriate court in any other county if it finds it to be a more appropriate forum. However, after a careful review of the record, we find no evidence that Father raised an objection to venue either at the time Mother filed her petition for modification of custody or before, during, or after the custody hearing. Therefore, no claim relating to venue has been preserved for appeal and any challenge to venue is waived.
¶ 20 Father's jurisdictional assertion likewise provides no basis for relief. The only mention of jurisdiction came at the conclusion of the May 1, 2009 proceedings when Father's counsel advised the trial judge that Father had a question about jurisdiction. The trial judge responded, "I maintain the jurisdiction because it's shared custody. ... At least I'm putting that in the order, and I'm sure a Judge in... Blair County will follow that simply because once you have shared custody there's no reason for any other jurisdiction to be involved." N.T., 5/1/09, at 44. Although it is not clear whether Father's issue raises a question of venue or jurisdiction, we agree that the trial court in Westmoreland County properly exercised its jurisdiction over these proceedings. See *1241 23 Pa.C.S.A. § 5421-22. Appellant's sixth issue fails.
¶ 21 Because none of Father's issues provides any basis for relief, we affirm the trial court's order entered on May 4, 2009.
¶ 22 Order affirmed.
NOTES
[1] Testimony presented at the April 23 hearing reflects both parties were in fact unrepresented by counsel at the time when they entered into the May 2008 custody agreement. (N.T., 4/23/09, at 15.)
[2] Because Mother and Father agreed Father could relocate with the Children, there was no hearing to consider the relocation criteria announced by this Court in Gruber v. Gruber, 400 Pa.Super. 174, 583 A.2d 434 (1990). See n. 4, infra.
[3] Ferdinand v. Ferdinand, 763 A.2d 820 (Pa.Super.2000).
[4] Gruber v. Gruber, 400 Pa.Super. 174, 583 A.2d 434 (1990) See Billhime v. Billhime, 869 A.2d 1031, 1037 (Pa.Super.2005) (quoting Gruber at 439 ("[I]n relocation cases, the court must balance the parties' interests in light of the best interests of the children by analyzing the specific factors set forth in the Gruber case, as follows: 1. The court must assess the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not a momentary whim on the part of the custodial parent. * * * 2. Next, the court must establish the integrity of the motives of both the custodial and the non-custodial parent in either seeking the move or seeking to prevent it. * * * 3. Finally, the court must consider the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.")).
[5] See, e.g., In re Adoption of S.B., 979 A.2d 925, 929 n. 8 (Pa.Super.2009)