J-S67001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.J.E. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| K.T.P. | No. 1084 MDA 2015 |

Appeal from the Order entered May 27, 2015,
in the Court of Common Pleas of York County,
Family Court, at No(s): 2014-FC-1455-03

BEFORE:  BOWES, PANELLA, and PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                     **FILED JANUARY 05, 2016**

J.J.E. ("Father") appeals from the child custody order granting K.T.P. ("Mother") primary physical custody and shared legal custody of the parties' three children, A.E., J.E., and Z.E.  The trial court granted Father periods of partial physical custody.  Upon careful review, we affirm.

The certified record reveals the following facts and procedural history. A.E. was born during 2007.  Her younger brother, J.E., was born during 2009, and her younger sister, Z.E., was born in 2011.  On August 7, 2014, Father filed a complaint in divorce that included a child custody count.  He requested shared legal custody, primary physical custody, or, at minimum, equally shared physical custody.  On October 20, 2014, the trial court entered an interim order awarding the parties shared legal custody and equally shared physical custody on an alternating weekly basis.  A custody

*Retired Senior Judge assigned to the Superior Court.

trial occurred on May 11 and 12, 2015. During the trial, Father testified on his own behalf and presented the testimony of J.E., the children's paternal grandmother. Mother testified and presented the testimony of Peter Thomas, Ph.D., a licensed clinical psychologist, who performed a psychological evaluation of the family on December 3, 2014. The court admitted Dr. Thomas's report into evidence. Mother also presented the testimony of K.R., the children's maternal grandmother. The trial court interviewed the two older children, A.E. and J.E., *in camera*.

The record evidence reveals that Father and Mother physically separated in July of 2014, at which time they started exercising equally shared physical custody of A.E., J.E., and Z.E. on an alternating weekly basis. Stipulation of Facts at 2, ¶ 11; N.T., 5/11/15, at 132-133. Father continued to reside in the marital residence located in Red Lion, Pennsylvania and Mother moved to York, Pennsylvania, a distance of approximately thirteen miles, or less than twenty minutes from Father. Stipulation of Facts at 3, ¶ 11; N.T., 5/12/15, at 264-265.

Father is employed at Lockheed Martin, located in Woodlawn, Maryland, as a computer programmer. Stipulation of Facts at 1, ¶ 8. He works five days per week from 8:00 a.m. to 4:00 p.m. N.T., 5/11/15, at 128. Mother is a registered nurse, and she is employed at Memorial Hospital, in the Emergency Department, located in York. Stipulation of Facts at 1, ¶ 7. Mother testified that she works between twelve to twenty hours

every week and on alternating weekends from 11:00 a.m. to 11:00 p.m. N.T., 5/12/15, at 230. Her work schedule is flexible. *Id*. at 230, 273-275.

At the time of the custody trial, A.E. was seven years old and in second grade. J.E. was five years old and in kindergarten. Z.E. was four years old, and she attended preschool when in Mother's physical custody at a frequency not specified in the record. The parties stipulated that A.E. and J.E. are doing well academically. During their *in camera* interview, A.E. and J.E. both stated a preference to continue the equally shared custody arrangement. N.T., 5/11/15, at 11, 20-22.

A.E. suffers from periodic emotional distress. N.T., 5/11/15, at 52; Psychological Evaluation, 12/3/14, at 30. J.E. has some behavioral problems in school caused by Attention Deficit Hyperactivity Disorder ("ADHD"), for which he is prescribed Ritalin. N.T., 5/11/15, at 125; N.T., 5/12/15, at 251. A.E., J.E., and Z.E. attend therapy at the Center for Creative Art and Play Therapy in York, due to the effect of the parties' divorce on them. N.T., 5/11/15, at 137.

Mother's expert witness, Dr. Thomas, testified with respect to his psychological evaluation performed on December 3, 2014. Dr. Thomas did not recommend an equally shared physical custody arrangement based on the young ages of the three children, as well as the emotional and/or behavioral issues of A.E. and J.E. N.T., 5/11/15, at 54. Dr. Thomas recommended that Mother maintain primary physical custody and Father

exercise periods of partial physical custody on alternating weekends and two evenings per week. *Id*. at 55; Psychological Evaluation, 12/3/15, at 32.

On May 26, 2015, the trial court provided its rationale for the custody decision on the record and entered a written order on May 27, 2015. The trial court awarded Mother primary physical custody and granted Father periods of partial physical custody on the first and fourth weekends of each month and every Tuesday and Thursday evening from 5:30 p.m. to 7:00 p.m. Further, the trial court awarded the parties shared legal custody.

On June 23, 2015, Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court issued its Rule 1925(a) opinion on July 31, 2015.

On appeal, Father presents the following issues for our review:

I. Whether the trial court erred as a matter of law and/or abused its discretion in awarding primary physical custody to Mother based upon the evidence of record?

II. Whether the trial court erred as a matter of law and/or abused its discretion in awarding primary physical custody to Mother by failing to consider the facts as they existed at the time of the hearing?

III. Whether the trial court erred as a matter of law and/or abused its discretion in awarding primary physical custody to Mother by simply adopting the expert's evaluation and recommendation?

Father's brief at 4.

The scope and standard of review in custody matters is as follows.

4

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 2009 PA Super 244, 986 A.2d 1234, 1237 (Pa.Super. 2009) (quoting *Bovard v. Baker*, 2001 PA Super 126, 775 A.2d 835, 838 (Pa.Super. 2001)). Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr., supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 2006 PA Super 144, 902 A.2d 533, 539 (Pa.Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa.Super. 2014).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on

the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (*quoting **Jackson v. Beck**, 858 A.2d 1250, 1254 (Pa.Super. 2004)).

The primary concern in any custody case is the best interests of the child. "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa.Super. 2006), *citing **Arnold v. Arnold***, 847 A.2d 674, 677 (Pa.Super. 2004).

When awarding any form of custody, § 5328(a) of the Child Custody Law, 23 Pa.C.S. §§ 5321-5340, provides an enumerated list of factors a trial court must consider in determining the best interests of a child:

**§ 5328. Factors to consider when awarding custody.**

**(a)** *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).[1]

This Court has stated that, "**[a]ll** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). Further,

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.[] § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa.Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .

> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). **Id.**

**A.V.**, 87 A.3d at 822-823. With these standards in mind, we turn to the merits of this appeal.

---

[1] The Child Custody Law was amended, effective January 1, 2014, to include the additional factor at 23 Pa.C.S. § 5328(a)(2.1). Instantly, the trial court neglected to consider this factor; however, since the factor is not relevant in this case, the omission is harmless.

8

As Father's issues are interrelated, we review them together. Father asserts that the trial court abused its discretion or committed an error of law with respect to § 5328(a)(3), (4), (7), (8), (9), (10), (11), (12), and (15). Father argues that the § 5328(a) factors weigh in favor of maintaining equally shared physical custody. As such, Father asserts that the trial court erred by adopting the recommendation of Mother's expert witness, Dr. Thomas. For the reasons that follow, we discern no abuse of discretion.

In its Rule 1925(a) opinion, the trial court summarized its rationale for granting Mother primary physical custody by explaining that § 5328(a)(10), (12), and (15) "tipped the scale in Mother's favor." Trial Court Opinion, 7/31/15, at 4. Accordingly, we address Father's arguments relative to these factors collectively at the outset. With respect to § 5328(a)(10), which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child, the trial court found that "both parents, for the most part, can adequately attend to" these needs of A.E., J.E., and Z.E. *Id*. The court continued:

> However, there was evidence presented that [A.E.] believed that somehow she needed to do something about Father's sadness. Specifically, Father told Dr. Thomas that sometimes when [A.E.] cries, he cries too, and then they cry together. Dr. Thomas indicated that the sharing of sadness and grief is not the kind of relationship that he hoped for between Father and [A.E.]; instead the relationship should focus on [A.E.]'s needs, not on Father's.

*Id*. (citation to record omitted).

9

In addition, the court found § 5328(a)(10) militated in favor of Mother because she testified that A.E., J.E., and Z.E. sometimes return to her house not having bathed while in Father's custody. Further, the court noted Mother's testimony that Z.E., then age four, returned to her custody at times "with red rashes and poop and [toilet] paper in her labia." *Id*. (citations to record omitted).

On appeal, Father acknowledges that he sometimes cried when comforting A.E. in her emotional distress. Father explained that, "[i]n the context of the situation, it is noted that Father did not want the divorce to occur and he was obviously sad about the status of his marriage." Father's brief at 18. However, Father argues that the trial court abused its discretion by placing "too great an emphasis on this exchange" in considering Father's ability under § 5328(a)(10). *Id*. Upon review, the testimony of Mother and Dr. Thomas supports the trial court's findings. As such, we discern no abuse of discretion. Moreover, we reject Father's argument, as stated above, because he "cannot dictate the amount of weight the trial court places on evidence." *R.M.G., Jr.*, *supra*.

With respect to § 5328(a)(12), each party's availability to care for the child or make appropriate child-care arrangements, the trial court explained that it found Mother more available to care for A.E., J.E., and Z.E. than Father based on their respective work schedules. The court found that the weekends Mother works "are usually the weekends the children are with

Father.  During the week, Mother can pick off of a list the times that best suit her and the children's schedules for that week.  Mother tries to choose times during the week when the children are in school."  Trial Court Opinion, 7/31/15, at 5 (citations to record omitted).  The court found as follows regarding the effect of Father's work schedule on the daily routine of A.E., J.E., and Z.E.:

> [Father] leaves for work around 6:30 a.m. to drop the children off at school and go to work.  When picking the children up, he gets to them by around 5:30 p.m., and then they get home around 6:00 p.m.  Father testified that the children go to bed around 7:30 or 8:00 p.m., which means he gets about an hour and a half quality time with them in addition to the time in the car to and from school.

*Id*.  Importantly, the trial court stated that it "does not question Father's ability to make appropriate child-care arrangements."  *Id*.  Nevertheless, it concluded that, "it was in the best interest of the children to minimize the amount of day care while maximizing the amount of time the children have with one or both of their parents."  *Id*.

Father argues in his brief that the trial court abused its discretion by penalizing him "for the mere fact that he was employed despite his ability to make appropriate arrangements for [A.E., J.E., and Z.E.] while he was working."  Father's brief at 20.  We disagree.  The trial court's findings with respect to § 5328(a)(12) are supported by the testimony of Father and Mother.  Further, the court's conclusion that it is in the best interest of A.E., J.E., and Z.E. to minimize the amount of day care and maximize the amount

of time they have with one or both parents is reasonable in light of the court's foregoing findings.

With respect to § 5328(a)(15), the mental and physical condition of a party, the trial court found that "Father has a history of Attention Deficit Disorder [("ADD")] and depression." Trial Court Opinion, 7/31/15, at 5. The court continued:

> In addition, Dr. Thomas' evaluation determined that Father has some behavioral dysfunction as well, one of which is struggling with impulse control. Father's issue with impulse control was also referenced by the testimony of both Mother and Father, indicating that Father sometimes grabs whatever is in his reach and throws it when he becomes angry. The other findings of behavioral dysfunction pertain to acting out feelings in a way that would be dysfunctional or poor, specifically difficulty in dealing with people in positions of authority, difficulty with interpersonal relationships, and at times may violate some social rules. To his credit, Father is receiving counseling for those issues. However, some of these findings by Dr. Thomas regarding Father's mental health are continuing, or at least persisted while Father was being seen by Dr. Thomas.

*Id.* at 5-6 (citations to record omitted).

Father testified that he was diagnosed with ADD nearly two years ago, for which he is prescribed medication. N.T., 5/11/15, at 125. In addition, Father has been in counseling since shortly before his diagnosis. *Id*. With respect to the court's finding regarding Father's problem with impulse control, Father acknowledged on cross-examination that, in arguments with Mother, he sometimes kicked or threw inanimate objects. N.T., 5/12/15, at

12

178-179. However, Father testified that he never threw any object at Mother. *Id*. at 179.

In his report, Dr. Thomas opined that the Father's psychological testing results "reflect significant psychological concerns." Psychological Evaluation, 12/3/14, at 26. Specifically, Dr. Thomas stated that the testing he performed on Father "suggests significant difficulty with depression, difficulty with anxiety and difficulty with acting out behavior and impulse control. . . ." *Id*. Further, Dr. Thomas stated:

> [Father] will likely be somewhat more comfortable with concrete moments and problem solving events than he is with emotional moments and relationship events. [Father] will be somewhat withdrawn socially. He identified difficulty with reading social cues. He also stated that he gets frustrated with authority systems that do not work well.

*Id.*

Father argues that the trial court abused its discretion in weighing this factor against him because "Dr. Thomas noted that Mother self-reported that she has Attention Deficit Disorder," and that she portrayed symptoms of depression as well, "but that she has not had any 'significant mental health intervention or treatment.'" Father's brief at 21 (citation omitted). Father asserts that, in contrast to Mother, he receives mental health treatment. Moreover, Father argues that Dr. Thomas's concerns regarding Father's mental health "were simply based upon the possibility of something happening in the future; *i.e.*, whether Father would continue with the

treatment he was presently doing and if his condition became more pronounced." *Id*. at 22. As such, Father argues that Dr. Thomas's concerns in this regard are speculative, and that the court erred to the extent it based its decision on these concerns.

With respect to Mother's mental health, Dr. Thomas stated in his report, that Mother "presents with some limited mental health issues. Her psychological testing described difficulty with some anxiety related experiences." Psychological Evaluation, 12/3/14, at 31. Further, Dr. Thomas stated as follows:

> [Mother] indicates having an Attention Deficit Disorder. She has not had significant mental health intervention or treatment. . . . [Mother] presents with an emotional system that is moderately closed. . . . At times she could wander somewhat in her focus. There is a degree of intensity to her presentation and she is intense about her concerns with father. . . . [Mother] will likely be equally comfortable with concrete moments and problem solving events as she is with emotional moments and relationship events. [Mother] self-identifies difficulty with patience and distractibility.

*Id*. at 25.

Nevertheless, Dr. Thomas opined in his report that Father "presented with more dramatic dysfunction." *Id*. at 31. He continued:

> [Father's] described dysfunctions were significant. His record reflected the same type of anxiety events that mother's record described. Further, father's record indicated problems with impulse control and dealing with authority figures, significant problems with depression as well as some problems in the area of thought dysfunction, particularly suspiciousness and mistrust. Taken together, [Father]'s testing suggests that his psychological problems are important and substantial.

*Id*.  On cross-examination, Dr. Thomas further explained his concerns

regarding Father's mental health as follows:

> Q. So if we look at the history of . . . [Father] and his parenting, we can also say that his mental health conditions are not going to cause a problem in the future with regard to his parenting.  Is that a fair statement?
>
> A. I would not make that statement.  I would agree with . . . the statement of, in the past are there events that reflect some sort of mental health dysfunction being acted out on the children, and that [ ] answer would be no.
>
> . . . .
>
> I would remain concerned about these mental health findings, and I can't guarantee that they won't happen in the future.
>
> Q. What would happen?  He's depressed and A[DD] and has anxiety.
>
> A. Well, there was more to it.  He also had an elevation on the scale about problems with authority figures.  That could lead to job loss, which I guess had happened in the past.  He said poor impulse control, difficulties with memory and concentration.  There were some elements of concern about acting out behaviors that could occur.
>
> I think the depression and the anxiety, what could happen, what would be the worse-case scenario would be that one of those conditions could sort of engage and become more pronounced, that would certainly be a problem.  In other words, if he became severely depressed.
>
> Q. But you didn't find him in that state presently?
>
> A. Right.
>
> Q. This is just something that could happen in the future?
>
> A. Right.

Q. Or it may not happen in the future?

A. Correct.

N.T., 5/11/15, at 80-82.

Although Dr. Thomas indicated on cross-examination that his concerns were speculative regarding Father's mental health deterioration, we cannot conclude that the trial court abused its discretion with respect to its findings related to § 5328(a)(10) and the weight it assigned to this factor. The findings and conclusions set forth by Dr. Thomas in his report, as well as Dr. Thomas's testimony, reveal that Father's psychological dysfunction existed at the time of Dr. Thomas's evaluation and was more significant than that of Mother. We conclude that it was reasonable for the court to consider this in fashioning its custody order. Therefore, we reject Father's assertion that the trial court erred by relying on Dr. Thomas's opinion in this regard.

Next, we address Father's remaining challenges to the court's best-interest analysis. Father argues that the trial court abused its discretion in its findings with respect to § 5328(a)(3), the parental duties performed by each party. Specifically, Father argues that the trial court abused its discretion to the extent it based its findings on Mother performing most of the parental duties for A.E., J.E., and Z.E. prior to the parties' separation. Father argues that the court should have weighed this factor equally between the parties because, since their separation in July of 2014, Father

16

and Mother have equally performed the parental duties on behalf of A.E., J.E., and Z.E.

We reject Father's argument because the court stated on the record that it did consider that the parties have been performing parental duties equally since their separation.  *See* N.T., 5/26/15, at 7-8.  In addition, the court did not indicate whether it found this factor in favor of Mother and Father, and it did not base its custody decision on this factor.  Further, we reject Father's argument because he "cannot dictate the amount of weight the trial court places on evidence."  *R.M.G., Jr.*, *supra*.

The court found § 5328(a)(4), the need for stability and continuity in the child's education, family life, and community life, "very significant" in determining that a primary physical custody arrangement, subject to partial custody of the other parent, was in the best interest of A.E., J.E., and Z.E.  *See* N.T., 5/26/15, at 8.  It reasoned,

> The children need stability and continuity in their lives – they're very young.  They have not developed the coping skills necessary to allow them the best chance to thrive in an equally shared custody arrangement.  Maybe, as they get older, that will change, but I agree with Dr. Thomas, at this point, these children need to have a single home.  They need to know that it is their home.  They need to know that when they get out of school, they're going back to their home.

*Id*.

In his psychological evaluation, Dr. Thomas did not recommend an equally shared physical custody arrangement primarily because of the age of the children. He explained:

> The developmental status of these children is an important factor to consider. At age three, [Z.E.] remains in a very dependent stage of life. . . . For [Z.E.], and for [J.E.] too, they are at a stage of developing a basic sense of trust and security with the larger world. Their skills for handling transition and change are more limited than those of older children. . . . [A.E.] is slightly older. . . . [A.E.] has better skills for handling transitions and moving back and forth between the two homes. However, her anxiety process will make those events more difficult.

Psychological Evaluation, 12/3/14, at 30. Dr. Thomas stated in his report that the second reason he did not recommend an equally shared physical custody arrangement is "that the children are struggling emotionally." *Id*. at 32. He continued:

> Certainly, there are a variety of reasons why their emotional experience could be upset, primarily the divorce circumstances . . . . However, the custodial program involving significant changes in residence may contribute significantly to those behaviors. The children are not prospering. A program of evenly shared time is not recommended.

*Id*.

Father argues that the trial court abused its discretion with respect to § 5328(a)(4) because A.E. and J.E. have been doing well in school under the equally shared physical custody arrangement. Further, he argues that granting Mother primary physical custody "essentially disrupted any stability that [A.E., J.E., and Z.E.] enjoyed. . . ." Father's brief at 13.

Based on the foregoing recommendation of Dr. Thomas set forth in the psychological report, as well as the testimony of Dr. Thomas, we conclude that the trial court did not abuse its discretion with respect to its findings and the weight it assigned to § 5328(a)(4). Indeed, Dr. Thomas's recommendation considered the overall well-being of A.E., J.E., and Z.E., and was not limited to the academic performance of A.E. and J.E. Further, we reject Father's argument because he "cannot dictate the amount of weight the trial court places on evidence." **R.M.G., Jr.**, **supra** at 1237 (internal citations omitted).

Father also asserts that the trial court abused its discretion under § 5328(a)(7), the well-reasoned preferences of the child, based on the child's maturity and judgment, because A.E. and J.E. testified *in camera* with respect to their preference that the custody arrangement stay the same. The trial court stated in its Rule 1925(a) opinion that A.E. and J.E. "love both parents very much." Trial Court Opinion, 7/31/15, at 8. The court stated that, "[b]oth children expressed a preference for keeping the custody arrangement the same. However, given the young age of the children, they did not have the maturity or the intellectual resources to warrant the [t]rial [c]ourt giving much weight, if any, to their preferences." **Id**. (citations to record omitted). Based on the totality of the record evidence, we discern no abuse of discretion by the court in failing to give weight to the custody preference of A.E., then age seven, and J.E, then age five. Father's

19

argument also fails to the extent he attempts to "dictate the amount of weight the trial court places on evidence." **R.M.G., Jr.**, **supra**.

With respect to § 5328(a)(8), the attempts of a parent to turn the child against the other parent, Father argues that the trial court erred "in failing to consider the statements made by Mother to [A.E.] when finding that neither parent attempted to turn the children against [the] other [parent]." Father's brief at 16. Specifically, Father asserts that the court erred in failing to consider Mother's statement to A.E., included in Dr. Thomas's report, that "'Mother told [A.E.] that [Father] was getting dangerous[.]'" **Id**. (citation omitted).

The certified record confirms Mother's declaration to A.E. **See** N.T., 5/26/15, at 11. Likewise, there is no indication that the trial court considered the isolated statement in fashioning its custody award. Nevertheless, in light of the fact that record does not demonstrate a pattern of behavior by Mother in this regard, we find the trial court did not err in failing to highlight this incident. **See** N.T., 5/11/15, at 100.

Regarding § 5328(a)(9), which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child adequate for the child's emotional needs, Father argues that the trial court abused its discretion in finding that he "'might have a slight edge' over Mother with respect to the nurturing factor." Father's brief at 17. Rather, Father asserts that Dr. Thomas's evaluation and testimony demonstrates "that Father

clearly is the parent who is more able to provide appropriate nurturing" for A.E., J.E., and Z.E. *Id*. at 18. Upon review, the court recognized that both parents are capable of nurturing the children, and that Father is particularly able to calm A.E. when she has tantrums. N.T., 5/26/15, at 12. Upon review of the certified record, we discern no abuse of discretion by the court. As such, we defer to the court with respect to the weight it assigned to this factor. *See R.M.G., Jr.*, *supra*.

Finally, Father argues that the trial court abused its discretion under § 5328(a)(11), the proximity of the residence of the parties, to the extent it did not weigh this factor in favor of an equally shared physical custody arrangement since the parties live in close proximity. Based on the totality of the certified record, we find no basis for relief. Therefore, we likewise defer to the trial court in the weight it assigned to this factor. *See R.M.G., Jr.*, *supra*.

Based on the foregoing, we disagree with Father that the § 5328(a) factors militated in favor of maintaining equally shared physical custody. Furthermore, contrary to Father's protestations, no basis exists to disturb the trial court's acceptance of Dr. Thomas's recommendations. In its Rule 1925(a) opinion, the court stated that the psychological evaluation by Dr. Thomas "was un-controverted, and was found by the [t]rial [c]ourt to be credible and persuasive." Trial Court Opinion, 7/31/15, at 6. As required by our restrained standard of review, we defer to the trial court with respect to

21

this credibility determination.  **_See R.M.G., Jr._**, **_supra_**.  Therefore, Father's issues on appeal fail.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/5/2016