J-A01036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.V. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.K. | : | |
| | : | |
| Appellant | : | No. 2128 EDA 2019 |

Appeal from the Order Entered June 26, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2014-28624


BEFORE:   NICHOLS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED FEBRUARY 12, 2020**

K.K. (Father) appeals from the June 26, 2019 Modification of Custody Order filed in the Court of Common Pleas of Montgomery County, by the Honorable Kelly C. Wall.  After careful review, we affirm.

Father and A.V. (Mother) are the parents of two minor children, I.K., a girl, who was five years old in May 2019, and N.J.K., a boy, who was then three years old.  N.J.K. is on the autism spectrum and receives various services provided by therapists who come to Father's home on a weekly basis. The parties have shared custody since the children's birth; custody was formalized in the form of an order entered on October 13, 2017.[1]  Mother's

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The October 31, 2017 order provided for shared legal and primary physical custody to Father from Sunday at 7 pm through Friday at 4 pm and every

son from a prior relationship, D.Y., lives with his paternal grandparents during the week, but lives with Mother on weekends. Mother also has an eighteen-year old daughter, K.S., from another relationship.

In May 2018, Father filed an emergency petition to modify custody, alleging that I.K. had reported to him that D.Y., who was then 12, had inflicted minor bruises and cuts on both I.K. and N.K.J., and that D.Y. had poked I.K. in her vagina with his finger and with small toys. An Interim Custody Agreement, pending the outcome of investigations by the police and by the Office of Children and Youth (OCY), was entered on July 18, 2018 pursuant to which the parties agreed that during Mother's custodial periods with the parties' children, D.Y. would not be around them at any time.

Following a full hearing on May 30, 2019, the trial court issued its June 26, 2019 order. The order maintained the legal and physical custody arrangements set forth in the 2017 order, but altered the transportation arrangements to require Father to pick up the children at Mother's residence on the days that she has the children until 7 pm. In addition, the June 26, 2019 order specified the following with regard to supervision:

---

other Saturday at 9 am through his regular weekday schedule, which extends through Friday. Mother also has partial custody on Monday, Tuesday, and Thursday from 4 pm until 7 pm and every Friday at 4 pm until Saturday at 9 am, except every other weekend when she has them through Sunday at 7 pm. The order further prohibited the parties' children from entering the homes of the "Y" family (the home of D.Y., Sr., the father of D.Y.), and D.Y., Sr.'s extended family was prohibited from providing childcare for the parties' children.

- 2 -

Mother's son, D.Y. is permitted to be present in Mother's home and at any activities and events when the parties' children are present and in her custody. HOWEVER, Mother must be physically present during any such times, ensure that D.Y. is never left alone with the minor children and must be aware of any contact between the children and D.Y. In the event an accident does occur involving D.Y., Mother shall immediately notify Father or risk an adverse change in custody.

6/26/19 Modification of Custody Order ¶ 3.C.a. The order further specified that the parties' children shall not be allowed in D.Y.'s bedroom alone with him or to sleep in the same bed with D.Y. at any time; that they are not allowed to be at or near the homes of the "Y" family; that the parties establish an "OurFamilyWizard" account to communicate regarding the children's schedules; and that I.K. shall continue in therapy, with the parties participating in the counseling as recommended by the therapist. *Id*. at ¶¶ 3.C.d.-e., 3.D.-E. Father filed a notice of appeal.[2]

Father raises the following issues before this Court:

I.    Did the trial court abuse its discretion when the court disregarded substantial evidence of physical and sexual abuse and denied Father's petition to modify custody, and instead made only minor modifications to the existing custody order that did not address the factors that had placed the victims at risk when in Mother's care?

II.   Did the trial court abuse its discretion when it kept the physical custody schedule the same and permitted Mother to exercise custody of her 13-year-old son, D.Y., at the same time she had care of the parties' 5-year-old daughter and 2-year-old son, without evidence that the

_____

[2] On July 22, 2019, Father filed a concise statement of errors complained of on appeal, and on August 22, 2019, the trial court issued its opinion.

order was sufficient to provide adequate protection to the younger children?

Father's Brief at 9.

In reviewing Father's issues, we are "empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions," but "we may not interfere with those conclusions unless they are unreasonable in view of the trial court's actual findings; and thus, represent a gross abuse of discretion." *C.M. v. M.M*., 215 A.3d 588, 591 (Pa. Super. 2019)(internal citations omitted). Furthermore, on issues of credibility and weight of the evidence:

> [W]e defer to the findings of the trial court, who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr. v. F.M.G*., 986 A.2d 1234, 1237 (Pa. Super. 2009)(internal citations omitted).

Father's two issues are intertwined: he asserts that the trial court abused its discretion because its modified order disregarded substantial evidence of inappropriate sexual contact, and does not therefore adequately protect I.K. and N.J.K. from D.Y. Father posits that I.K. and N.J.K. would not need the protections incorporated into the modified order if something had

not happened between them and D.Y., and that Mother is incapable of supervising the children as ordered, especially since she does not acknowledge that any abuse could have occurred. Father asks the trial court to prohibit D.Y. from *any* interaction with I.K. and N.J.K.

In its 1925(a) Opinion, the trial court set forth relevant factual background:

> As a result of a large settlement due to an injury to his foot, Father has significantly more resources than Mother does. He owns a large home, does not work due to his injury and can devote all his time to the children. Mother, on the other, has two (2) older children, along with the parties' two (2) young children, and is very busy taking care of all of them and providing for their financial support. She is a school bus driver and works irregular hours throughout the weekdays.
>
> Her work schedule has created a challenge in affording her significant custodial time with the children. Mother realizes this and although she would like a "9 to 5" job, she is making the best of her current situation and has scheduled her custody around her job to ensure that she maximizes her time with them. Mother gets the children on alternate weekends and in the afternoon and evenings a few days per week. She does not have weekday overnights because her bus run begins too early in the morning. These factors have worked to Father's advantage in regard to the custodial arrangement between the parties.
>
> Finally, there have been issues between Father and the father of D.Y. in the past. Because of these issues, Father required that a provision be placed in the parties' original Custody Order issued on October 1, 2017, keeping D.Y.'s father and other family members away from the parties' children. Father made abuse

allegations against Mother's current boyfriend a few years ago and paid to have him take a lie detector test that came back negative.

Trial Court 1925(a) Opinion at 9-10 (citations to N.T. omitted).

In making a determination as to custody, the court must make a determination as to the best interests of the child. 23 Pa.C.S. § 5232. Section 5328 of the Custody Act provides an enumerated list of sixteen factors a trial court must consider in determining the best interests of the child, and the court is to give "weighted consideration" to those factors that affect the safety of the child. 23 Pa.C.S. Section 5328. In Findings of Facts issued following the hearing, the trial court fully addressed all of those factors, listed in Section 5328(a); regarding factor #2, "[t]he present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child," the trial court offered a full history of the allegations of abuse and its related findings thereon.

> In late April of 2018, Father testified that I.K. told him that D.Y. had poked her genitals with his finger, a broccoli toy and a puzzle letter. Father also found I.K. making humping gestures…and when asked why she did this, I.K. told him that D.Y. [tells her to do this] when he is "poking" her…[Father] took I.K. to CHOP [Children's Hospital of Philadelphia] where she repeated this information to the health care providers. CHOP referred Father to Mission Kids to have the child interviewed. After the Mission Kids interview, there was no follow-up by OCY [Office of Children and Youth] and no criminal charges were filed. This Court

> reviewed a video of the interview and had **concerns** after viewing the same.

Trial Court Findings of Fact (F.F.), Custody Factors at 2 (emphasis supplied). However, in its 1925(a) opinion, the trial court stated "[w]hile this Court did have concerns after viewing the Mission Kids interview, this is but one factor that the Court had to take into consideration in determining what would be in the best interests of the parties' children to protect their safety and well-being." 1925(a) Opinion at 6. In its findings of facts, the trial court set forth a detailed description of I.K.'s counseling sessions, noting that it questioned "the appropriateness of Father being present during [two sessions] wherein he told [the therapist], apparently in front of I.K., about the alleged abuse by D.Y." and "it was after Father related the information regarding the "bed sharing" that [the therapist] made a report to OCY." *Id*. at 7. The trial court further found that after this report, and a subsequent investigation, the information was determined to be "unfounded," and after 14 subsequent therapy sessions, the therapist never made another report to OCY. *Id*. The trial court found "as the counseling sessions continued with I.K., [the therapist] entered a note on her report…stating that she was concerned that both parents talk negatively about the other in front of I.K., causing [I.K.] to have a skewed view of each parent" and further noted that the therapist expressed confusion as to which parent was telling her the truth about various scenarios related to her by each one; the trial court found these assessments to be significant factor underlying the issues in this case. *Id*. at 8.

In its analysis under Section 5328(a), custody factor #2, the trial court found, regarding sleeping arrangements, that prior to October 2018, Mother had been living in a two-bedroom apartment with her sister, her sister's boyfriend, her oldest daughter, and D.Y., when he was there on weekends. F.F., Custody Factors at 4. However, in October 2018, Mother moved into her boyfriend's three-bedroom townhouse, wherein Mother and her boyfriend have a bedroom, her boyfriend's daughter has a bedroom, N.J.K. has his own bedroom when he is there, and Mother's daughter, K.S., sleeps in the finished basement, where I.K. also sleeps when she is with Mother. D.Y. sleeps on the couch or in the room of the boyfriend's daughter when she is not there. *Id*.

The trial court also noted Mother's vehement denial that any physical and/or sexual abuse has taken place, or would ever take place against the parties' children by D.Y. F.F., Custody Factors at 5. Mother describes D.Y. as a good student, a talented athlete and a typical teenager, who is more interested in sports and playing video games than in spending time with his half-siblings. *Id*. Mother believes that Father is coaxing I.K. to make false accusations because he does not like D.Y., and one of the reasons the parties separated was due to Father's poor treatment of D.Y. *Id*.

The trial court found, in its analysis of custody factor #9, "which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional need," that:

> [Mother] testified that she is always present when
> D.Y. is with the children and that she looks after all of
> her children. Mother appears to be a kind and loving

parent who genuinely has the best interest of all of her children at heart. She credibly refutes the allegations made against D.Y. and the claims that she does not properly supervise and protect the parties' children. The Court believes that Mother does supervise the children when D.Y. is present and she does not permit them to be around the ["Y"] family, unless it is at a sporting event where D.Y. is participating…The Court feels comfortable from Mother's testimony that she keeps the parties' children safe, even though some safeguards are necessary to ensure their continued well-being.

F.F., Custody Factors at 8. In its findings of fact, the trial court concluded that "despite some of the reasonable concerns raised by Father, this Court finds Mother to be a loving parent who will do whatever is necessary to protect <u>all</u> of her children." F.F., Conclusion at 11 (emphasis in original). The trial court denied Father's request, but stated that "[w]hile Mother may have the best intentions in protecting her children **and although there has been no finding of abuse by her son against the children**, it will benefit everyone involved to make sure that there is no opportunity for any further potential allegations to be made." F.F., Custody Factors at 12 (emphasis supplied).

In its 1925(a) opinion, the trial court acknowledged that it had stated at the May 30, 2019 hearing that I.K. appeared "truthful in her description of what occurred with D.Y." 1925(a) Opinion at 5 (citing May 30, 2019 N.T. at 5). However, the trial court further stated that it soon became apparent that Father's credibility and motivation for bringing the case may have influenced both I.K. and I.K.'s therapist. 1925(a) Opinion at 5. The trial court concluded

that no credible evidence had been presented that D.Y. had inappropriately touched or abused I.K., stating:

> It is the responsibility of this Court to assess the risk of harm and to determine if the children are safe in Mother's care. Allegations of inappropriate touching and abuse of a young child must be investigated by the proper professionals. Father did this by calling the child's pediatrician, who then sent them to [Children's Hospital of Philadelphia]. An OCY investigation was opened and the child was interviewed by Mission Kids. After interviewing all of the parties involved, the OCY investigation came back "unfounded." Upon reviewing the Mission Kids interview, the District Attorney's Office did not find grounds for any criminal charges. There has been no validation by an agency or professional of the allegations of abuse of I.K. by D.Y. While Father contends that there is "credible" evidence that I.K. was inappropriately touched and abused by D.Y., no such evidence was presented to this Court.

1925(a) Opinion at 8 (citations to N.T. omitted). The trial court explained that although there was "no proof that D.Y. has abused either of the parties' children," such claims necessarily raise concerns in and of themselves, and found that such concerns needed to be addressed not only to ensure the childrens' safety, but "also to protect D.Y. from future allegations." *Id*. at 11. According to the trial court, while it believes that Mother would supervise D.Y. while in the presence of the parties' children even in the absence of the Court's direction, its order serves to enforce the need to do so, and provides legal recourse if the directive is not complied with by Mother. *Id*. at 14.

We find that the trial court engaged in a detailed, thoughtful analysis of the Section 5328(a) custody factors, and specifically of factor #2, regarding

- 10 -

assessment of risk of harm to the parties' children and the provision of adequate safeguards and supervision for them. We discern no abuse of discretion, and deem the trial court's conclusion to be reasonable in light of the record evidence. Accordingly, we affirm the June 26, 2019 custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/20