J-A27014-17

**NON-PRECEDENTIAL DECISION-SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| S.B., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| S.S., | |
| Appellant | No. 561 WDA 2017 |

Appeal from the Order Dated March 16, 2017
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD-15-008183-10

| | |
|---|---|
| S.B., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| S.S., | |
| Appellant | No. 562 WDA 2017 |

Appeal from the Order Dated March 16, 2017
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD-008183-10

BEFORE:  BENDER, P.J.E., SHOGAN,  J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                 **FILED DECEMBER 18, 2017**

S.S. (Mother) appeals from two orders, both dated March 16, 2017.[1] The order designated at appeal 561 WDA 2017 denied in part and granted in part S.B.'s (Father) motion requesting an award of costs and legal fees relating to this protracted custody matter. The order designated at appeal 562 WDA 2017 directed the appointment of Mark Gubinsky, Esq., as an aftercare professional, acting under the guidance of the entity known as Family Bridges with a goal of facilitating the restoration of Mother's custody rights. After extensive review of the record in this matter, which includes documents relating to Mother's three prior appeals to this Court and an application requesting our Supreme Court to exercise its King's Bench powers, we affirm both orders.[2]

Mother filed a timely appeal accompanied by a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). She raises the following issues for our review:

> 1) Did the trial court legally err and abuse its discretion in appointing Mark Gubinsky, Esq.[,] as the Aftercare Professional

---

[1] Mother's appeals were consolidated by this Court *sua sponte* on April 26, 2017.

[2] In the trial court's Pa.R.A.P. 1925(a) opinion, dated May 30, 2017, we note that the court requested the consolidation of these two appeals with the appeal at 74 WDA 2017. The trial court explained that the orders now on appeal "are part and parcel of the custody order entered o[n] December 14, 2016[,]" which is the subject of the earlier appeal. We are unable to comply with the trial court's request in that the decision in the appeal at 74 WDA 2017 was filed on October 20, 2017. **See S.B. v. S.S.**, 74 WDA 2017, unpublished memorandum (Pa. Super. filed Oct. 20, 2017).

("ACP") where the law recognizes no such entity, and where such appointment is simply the Court['s] acquiescing to the demands of the discredited psychologist Randy Rand and his self-styled Family Bridges program?

2) Did the trial court legally err and abuse its discretion in granting authority to the ACP, and in deeming him some sort of "expert" where he has no such qualifications, [and] as such[,] is simply the [c]ourt and the ACP['s] acquiescing to the demands of the discredited psychologist Randy Rand and his self-styled Family Bridges program?

3) Did the trial court legally err and abuse its discretion in delegating judicial decision making to the ACP, where such is simply the [c]ourt['s] acquiescing to the demands of the discredited psychologist Randy Rand and his self-styled Family Bridges program?

4) Did the trial court legally err and abuse its discretion in ordering [Mother] to pay the ACP's costs and fees?

5) Did the trial court legally err and abuse its discretion in ordering [Mother] to pay $2400 for 1.5 days of Dr. McGroarty's testimony, as there was no legal or factual basis for such award?

6) Did the trial court legally err and abuse its discretion in ordering [Mother] to pay $2740 in counsel's fees for 1.5 days of Dr. McGroarty's testimony, as there was [no] legal or factual basis for such award?

7) Did the trial court legally err and abuse its discretion in ordering [Mother] to pay $8000 for half of the costs of the Family Bridges Workshop, as there was no legal or factual basis for such award, and the award included costs which were unconnected to the Family Bridges Workshop?

8) Did the trial court legally err and abuse its discretion in ordering [Mother] to pay $3092.50 for counsel's fees incurred to respond to [Mother's] King's Bench Application, as there was no legal or factual basis for such award, and this [c]ourt had no jurisdiction to even consider such an award?

Mother's brief at 5-6.

As noted above, we have undertaken a comprehensive review of the certified record. We have also examined the briefs of the parties, the applicable law and the thorough, well-reasoned opinion authored by the Honorable Kim Berkeley Clark of the Court of Common Pleas of Allegheny County, dated May 31, 2017. We conclude that Judge Clark's opinion properly disposes of the issues presented by Mother in this appeal. Accordingly, we adopt the trial court's opinion as our own and affirm the orders on that basis.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/2017

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

FAMILY DIVISION

S.B.
Appellee,

vs.

S.S.
Appellant.

SUPERIOR COURT NUMBERS:
561 WDA 2017
562 WDA 2017

Family Division Docket Number
FD 15-008183

OPINION AND REQUEST FOR CONSOLIDATION WITH APPEAL AT 74 WDA 2017

FILED BY:

HON. KIM BERKELEY CLARK

Copies electronically served upon:

Robert Ducote, Esquire
Counsel for Appellant
4800 Liberty Avenue, 2nd Floor
Pittsburgh, PA 15224

Elizabeth Pride, Esquire
Counsel for the Appellee
Pride Law
957 Castle Shannon Boulevard
Floor 1
Pittsburgh, PA 15234

Maegan Susa Filo, Esquire
Guardian Ad litem
801 Freeport Road
New Kensington, PA 15068



ORIGINAL

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

FAMILY DIVISION

S.B.,
Appellee,

vs.

S.S.,
Appellant.

SUPERIOR COURT NUMBERS:
561 WDA 2017
561 WDA 2017

Family Division Docket Number
FD 15-008183

CLARK, J.                                                                    May 30, 2017

## OPINION

This is an appeal from Orders entered on March 16, 2017. On March 16, 2017, the parties were before this Court for a status conference to discuss the implementation of an "aftercare plan" to restore Appellant's custodial rights. After the conclusion of the status conference I appointed Mark Gubinsky, Esquire as the Aftercare Professional in this case and ordered the parties to cooperate with Mr. Gubinsky and the aftercare plan with a goal towards restoring Appellant's custodial rights. I ordered that the fees for the Aftercare Professional be shared equally by the parties. The appointment of an Aftercare Professional was part of the original custody order by this court entered on December 14, 2016. (*See* Exhibit "A", attached.) This order has been appealed at 74 WDA 2017. I submit that because the Orders entered on March 16, 2017 are part and parcel of the custody order entered om December 14, 2016, these appeals should be consolidated with the appeal at 74 WDA 2017.

On March 16, 2017, I also entered an order awarding counsel fees and expenses in the amount of $16, 232.50 to Appellee, S.B. (hereinafter Father).

Appellant, S.S., (hereinafter Mother) appeals the Orders entered on March 16, 2016 appointing an "After Care Professional" and awarding counsel fees and expenses to Father.

## MATTERS COMPLAINED OF ON APPEAL

With respect to the Order appointing an Aftercare Professional, Mother raises four matters on appeal. First, appellant alleges that I legally erred and abused my discretion in appointing Mark Gubinsky, Esquire as the Aftercare Professional (ACP), where the law recognizes no such entity.

Mother next contends that I erred and abused my discretion in granting authority to the ACP, and in deeming him some sort of "expert" where he has no such qualifications.

Next, Mother avers that I erred and abused my discretion in delegating judicial decision-making to the ACP.

Finally, Mother states that I erred and abused my discretion in ordering Appellant to pay the fees for the ACP.

As to the Order awarding counsel fees and expenses to Father, Mother raises four matters on appeal. First, Mother contends that I erred and abused my discretion in ordering her to pay $2,400.00 for one and one-half days of Dr. McGroarty's testimony, as she contends that there was no factual basis for such award.

In her next assignment of error, Mother alleges that I erred and abused my discretion in ordering her to pay $2,740.00 in counsel's fees for one and one-half days of Dr. McGroarty's testimony, as she contends that there was no factual basis for such award.

Mother states in her third matter, that I erred and abused my discretion by ordering her to pay $8,000.00 for one-half of the costs of the Family Bridges Workshop, as she contends

2 | P a g e

that there was no factual basis for such award that the $8,000.00 included costs which were unconnected to the Family Bridges Workshop.

Finally, Mother contends that I erred and abused my discretion by ordering her to pay $3,092.50 for counsel's fees incurred to respond to her King's Bench Application, as there was no legal or factual basis for such award and that I had no jurisdiction to consider such award.

## HISTORY OF THE CASE

1. F.B.H. (hereinafter the Child) was born on August 14, 2006 in Guatemala. He is 10 years old.

2. The Child was adopted by Father and A.H., Father's first wife.

3. The adoption was finalized in February 2007. The Child resided with his Father and A.H. in Upper St. Clair, Allegheny County, PA.

4. A.H. died of breast cancer on December 2, 2008, when the Child was two years and four months old.

5. Father was the sole caregiver for the Child for more than four years after the death of A.H.

6. Father met Mother on an online dating site at the end of May of 2012.

7. Father and Mother were married on September 30, 2012.

8. Mother moved into Father's Upper St. Clair residence on or about December 12, 2012.

9. Mother adopted the Child on April 25, 2013.

10. Mother moved out of the "main house" and into the guest house (or log house) in November 2013.

11. On March 22, 2014, Mother enrolled the Child in the Shadyside Academy Junior School located in the Point Breeze section of the City of Pittsburgh. The Child began attending Shadyside Academy in August of 2014.

12. On October 31, 2014, Mother purchased a home in the Point Breeze neighborhood of the City of Pittsburgh.

13. In November of 2014, Mother moved out of the marital residence in Upper St. Clair and into her home in Point Breeze.

14. On November 22, 2014, Father and Mother entered into an agreement concerning the custody schedule for the Child.

15. On June 11, 2015, Father filed a Complaint for Custody.

16. On August 31, 2015, Mother filed a Counterclaim for Primary Custody.

17. On October 9, 2015, the parties had a hearing before Hearing Officer Valles to set an interim custody order, pending the custody trial. Hearing Officer Valles entered a recommendation expanding Father's custodial time with the Child.

18. On October 14, 2015, Mother filed a Petition for Protection from Abuse (PFA) on behalf of herself and The Child alleging primarily that Father had sexually abused the Child.

19. The hearing on the PFA Petition began on October 28, 2015 before the Honorable Jennifer Satler who was the judge of record at that time. The hearing was not completed on October 28th, so a second day was scheduled for November 3, 2015. Judge Satler ordered that Father have supervised partial custody.

20. On October 30, 2015, Judge Satler entered an Order recusing herself from the case. On November 2, 2015, the case was reassigned to Judge Kim Berkeley Clark.

21. On November 4, 2015, Judge Satler entered an Order setting the PFA matter for a status conference with Judge Clark on November 16, 2015. It was also ordered that the temporary PFA Order remained in effect and Father was to continue having supervised partial custody with the Child.

22. On November 16, 2015, after a status conference, the PFA hearing was scheduled to resume on November 23, 2015.

23. After a five day trial, I dismissed the PFA Petition and vacated the temporary PFA Order. I also scheduled a pre-trial conference for the custody matter on January 21, 2016.

24. On January 21, 2016, I scheduled the matter for a three-day custody trial for April 20, 21, and 22, 2016.

25. On February 2, 2016, Mother filed a second PFA petition on behalf of herself and The Child. The second petition contained additional disclosures of alleged sexual abuse. The PFA Petition was presented before Senior Judge Mazur, who denied the Petition and suggested that it be re-presented before me.

26. On February 3, 2016, Mother represented the second PFA Petition, which I also denied.

27. Neither Judge Mazur nor I scheduled a hearing on the Petition. Mother filed an appeal to the denial of her PFA petition without a hearing.

28. The custody trial began on May 20, 2016. The custody trial concluded on November 18, 2016, after 18 days in trial. At the conclusion of the trial, the parties were ordered to submit proposed findings of fact and proposed orders of court by December 5, 2016. The court set December 12, 2016 as the date to place its findings and order on the record.

29. On December 12, 2016, I placed findings on the record, which addressed the issue of the alleged sexual abuse of the child and the sixteen factors to be considered in awarding custody. I also entered an Order giving Father sole legal and physical custody of the Child. As recommended by Dr. J. Anthony McGroarty, I also ordered Father and the Child to participate in the Family Bridges Workshop for Troubled and Alienated Parent-Child Relationships. I also ordered that Mother not have any contact or partial custody with The Child for a period of 90 days. The order specified that after completion of Family Bridges, I would schedule a conference to determine, among other things, Mother's partial custody.

30. On December 14, 2016, after a hearing on the record, and based upon a review of the testimony of Dr. McGroarty, and consideration of the arguments of counsel for both parties, I modified the Order entered on December 12, 2016 and ordered that upon completion of Family Bridges, Father was to take the Child on a five-day vacation.

31. On December 27, 2016, I filed written findings of fact in support of my decision. (See Exhibit A attached.)

32. On January 10, 2017, Mother timely filed on appeal as to my Orders entered on December 12, and December 14, 2016.

33. Father and the Child successfully completed the Family Bridges Workshop and the Child has been reunified with Father.

34. On March 16, 2017, I held a status conference concerning the after care plan to restore Mother's custodial and to render a decision on Father's Motion for Counsel Fees and Expenses.

35. On March 126, 2017, I appointed Mark Gubinsky, Esquire as the Aftercare Professional in this case and ordered the parties to cooperate with Mr. Gubinsky and the aftercare plan with a goal towards restoring Appellant's custodial rights. I also ordered that the fees for the Aftercare Professional be shared equally by the parties.

36. On March 16, 2017, I also entered an order awarding counsel fees and expenses in the amount of $16, 232.50 to Father.

Mother timely filed notice of appeal to the orders entered on March 16, 2017. Mother correctly identified this case as a Children's Fast Track Appeal and filed the Statement of Matters Complained of on Appeal with the notices of appeal pursuant to Rule 1925 (b).

## DISCUSSION

### I. APPOINTMENT OF THE AFTERCARE SPECIALIST

In her first issue raised on appeal, Mother alleges that I legally erred and abused my discretion in appointing Mark Gubinsky, Esquire as the Aftercare Professional (ACP), where the law recognizes no such entity. I disagree. In custody cases, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings, and thus, represent a gross abuse of discretion, *A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super2014). The Appellate Court will accept the trial court's conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings, *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super 2104). Moreover, on issues of credibility and weight of the evidence, appellate courts defer to the findings of the trial court, which has had the opportunity to observe the proceedings and demeanor of the witnesses. *R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super 2009).

On December 14, 2016, I entered an Order giving Father sole legal custody of the Child, which gives him the authority to make all medical, therapeutic, educational decisions on behalf of the Child. I also gave Father sole physical custody of the Child subject to the completion of the Family Bridges: A Workshop for Troubled and Alienated Parent-Child Relationships ("Family Bridges"). It is clear from the December 14th Order that the award of sole physical custody to Father was not intended to be permanent in nature but rather to allow Father the

6 | P a g e

opportunity to reunify with his son, from whom he had been alienated. As specified in the December 14, 2016 Order, "the resumption, timing and nature of contact between [the Child] and Mother will be based on the cooperation of [the Child] and Mother with these Orders, with the Family Bridges program, and with the aftercare professional, after a judicial conference upon praecipe by either party following the completion of the 90-day period." (*See* Order entered on December 14, 2016.)

In ordering the Family Bridges Workshop, I placed great weight on the testimony of Dr. J. Anthony McGroarty. Dr. McGroarty was ordered to complete a custody evaluation in this case. Dr. McGroarty met with Father, Mother and Child. He also interviewed therapeutic professionals and other witnesses in the case, reviewed more than 1200 pages of documents, and viewed the video of the forensic interview of the Child. Dr. McGroarty completed a detailed and comprehensive evaluation, upon which I relied. I accepted his findings, conclusions and recommendations. According to Dr. McGroarty, Appellant's goal was to displace Father as the primary parent. (CT11—p. 58-59)[1] Dr. McGroarty found signs of parental alienation in this case. (CT11—p 120) He believed that Mother had so much disdain for Father that it was unlikely that she would change her attitude towards him and support the Child in having a positive relationship with Father. (CT11—p. 121) Mother alienated the Child from Father. (CT11—p. 174) According to Dr. McGroarty, parental alienation is a form of emotional abuse of a child and creates in that child the idea the parent they love is dangerous and a neglecting or bad parent. (CT11—p. 122) Dr. McGroarty recommended:

> The Child and Father should engage in an intensive intervention such as
> Overcoming Barriers or Family Bridges. The purpose of these programs is to take
> the child and unfavored (sic) parent and put them into a setting where they can
> work to re-establish a positive relationship with the rejected parent, so that the

---

[1] CT11 refers to the transcript from testimony in the custody trial taken on August 26, 2016.

7 | P a g e

child will be able to enjoy the time with the rejected parent, re-established the feelings of love and comfort, without the fear of harming or hurting the alienating parent. (CT11—p. 137) The efficacy of the Family Bridges option has a significant chance of positive outcome. (CT11—p. 145) Further, failure to reinstate time with Father would cause the Child to have serious emotional problems. (CT11—p. 147)

It is clearly within the court's authority to order counseling that is necessary to effectuate the custody order. Pursuant to 23 Pa. C.S.A. § 5333 the court may, as part of a custody order, require the parties to attend counseling sessions. Additionally, in a custody case, the court should solicit competent expert testimony to assist it in determining the effect of transfer of custody on to a child. This is necessary in order for the court to be fully informed on this aspect of the case. *See* *E.A.L. v. L.J.W.*, 662 A.2d 1109 (Pa. Super 1995). In this case, I found that not only had Mother alienated the Child from Father, she also alienated him from his extended family and isolated him from his lifelong home, his friends, and his community. I accepted the competent expert testimony of Dr. McGroarty and found that Family Bridges was the best option for achieving reunification of the Child with his Father and extended family. Although Mr. Gubinsky is not actually providing counseling, he is providing services necessary to restore Mother's custodial rights with the Child.

Father and the Child have been successfully reunified. (*See* testimony of the guardian *ad litem*, H.T.—p.34-39.)[2] The only issue for the court, was what if any partial custody should Mother have. The Aftercare Professional is the second part of the Family Bridges Program designed to restore custodial rights to Mother. It should be noted that the parties agreed upon Mark Gubinsky, Esquire as the Aftercare Professional in this case. The purpose of the ACP is to work with Mother to prevent or at least, minimize the likelihood of re-alienation

---

[2] The letters H.T. refer to the pages of the transcript of the hearing on March 16, 2017.

of the Child and Father. Unless Mother works with the ACP, the likelihood of any modification of the December 14, 2016 order giving Father sole physical custody of the Child, is slim.

Appellant next contends that I erred and abused my discretion in granting authority to the ACP, and in deeming him some sort of "expert" where he has no such qualifications. Again, I disagree. As previously stated, the parties agreed upon the appointment of Mr. Gubinsky as the ACP. Mr. Gubinsky has not been appointed as an expert in this case, but rather as someone who will review the materials provided by Family Bridges with Mother and will initially supervise Mother's partial custody with the Child *when ordered by the court* and reporting progress to the Court. (*See* testimony of Mark Gubinsky, H.T.—p.8-19.)

In her third matter raised on appeal, Mother avers that I erred and abused my discretion in delegating judicial decision-making to the ACP. I strongly disagree.

The judicial decision-making has occurred—Father was awarded sole legal and physical custody of the Child. The order leaves open the option that, If Mother works with the ACP, her custodial rights may be restored. It is NOT anticipated that Mother will regain primary physical custody, but rather some form of supervised partial custody with the Child. It will be the court, not the ACP, who will decide if and when, Mother shall regain custodial rights to the Child.

Finally, Mother states that I erred and abused my discretion in ordering Appellant to pay the fees for the ACP. 23 Pa. C.S.A. § 5333 (d) provides: The court may order a party to pay all or part of the costs of the counseling sessions under this section. In this case notwithstanding the fact, the Father would not be working with the ACP, I ordered that each

parent be responsible for one-half of the fees. This argument clearly lacks merit and will not be addressed further.

## II.    AWARD OF COUNSEL FEES AND EXPENSES

Mother contends that I erred and abused my discretion in ordering her to pay $2,400.00 for one and one-half days of Dr. McGroarty's testimony, as she contends that there was no factual basis for such award. Pursuant to 23 Pa.C.S.A. § 5339- **Award of counsel fees, costs and expenses**: a court may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive, or in bad faith. Obstreperous or obstructionist behavior that increases the other party's expenses will justify an award of fees.

In deciding to order Mother to reimburse Father for one and one-half days of Dr. McGroarty's testimony or $2,400.00, I found that the behavior of Mother and her lawyers during the custody trial was obstreperous and obstructionist and greatly increased the expenses that Father had to pay. Specifically, Father called Dr. McGroarty as a witness in his case. Father's counsel examined Dr. McGroarty for one-half day. Mother's lawyers cross-examined him for another two days. While I believed that a half-day of cross would have been reasonable, I found that the additional one and one-half days that Dr. McGroarty was kept on the witness stand was unnecessary and did not add any value to the case of either party. (*See* findings on the record HT—p. 28) Accordingly, I ordered mother to reimburse Father for one and one-half days of Dr. McGroarty's testimony.

In her next assignment of error, Mother alleges that I erred and abused my discretion in ordering her to pay $2,740.00 in counsel's fees for one and one-half days of Dr. McGroarty's

testimony, as she contends that there was no factual basis for such award. For the reasons set forth above, I awarded counsel fees in the amount of $2,740.00 to Father.

Mother states in her third matter, that I erred and abused my discretion by ordering her to pay $8,000.00 for one-half of the costs of the Family Bridges Workshop, as she contends that there was no factual basis for such award that the $8,000.00 included costs which were unconnected to the Family Bridges Workshop. I take exception to this averment. Father presented proof via a cancelled check that the cost of the Family Bridges Workshop was $16,000. Father also asked for other costs associated with Family Bridges such as the transportation, which I declined to order. I also found that the parental alienation, which was solely Appellant's behavior caused the problem that made the program necessary. In this case, I found that Mother alienated the Child from Father and his extended family and isolated him from his lifelong home, his friends, and his community. I found that Family Bridges was the best option for achieving reunification of the Child with his Father and extended family and that splitting the costs of the Program was certainly reasonable under the circumstance.

Finally, Mother contends that I erred and abused my discretion by ordering her to pay $3,092.50 for counsel's fees incurred to respond to her King's Bench Application, as there was no legal or factual basis for such award and that I had no jurisdiction to consider such award.

In this case, I found Mother's King's Bench Application was "unnecessary and frivolous," as the Application was filed before the Superior Court had the opportunity to rule on the appeal from the order entered on December 14, 2016. (HT—p. 29). The Application has been denied by the Supreme Court. Father was suffered the expense of providing an answer to the King's Bench Application. Under 23 Pa.C.S.A. § 5339, a court may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that

the conduct of another party was in bad faith. I find that Mother's King's Bench Application was filed in bad faith.[3]

## CONCLUSION

Based on the foregoing, no reversible error occurred and the findings and rulings of this court should be left undisturbed. Additionally, as these appeal involve matters already on appeal at 74 WDA 2017, I respectfully request that these appeals be consolidated with the appeal at 74 WDA 2017.

BY THE COURT:

_____, A. J.

Kim Berkeley Clark

---

[3] It should be noted that Father requested approximately $189,000.00 in counsel fees and expenses and was awarded only $16,232.50 in fees and expenses.

12 | P a g e