J-S66003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| K.A. | : | |
| | : | |
| Appellant | : | No. 1833 EDA 2018 |

Appeal from the Order Entered May 17, 2018
In the Court of Common Pleas of Chester County
Domestic Relations at No(s): 2013-12558-CU

BEFORE: GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.: **FILED NOVEMBER 21, 2018**

Appellant, K.A. ("Father"), appeals from the order entered in the Chester County Court of Common Pleas, which granted primary physical custody of the parties' minor child, A.A. ("Child"), to Appellee, S.A. ("Mother"). We affirm.

The relevant facts and procedural history of this case are as follows. Father and Mother married in April 2008, and Child was born in February 2011. Child has behavioral health issues. In May 2013, Father lost his job, left the marital home, and moved to California for work opportunities. Shortly after, Father and Mother divorced. On December 26, 2013, Mother filed a complaint for custody, and on March 5, 2014, Father filed an emergency petition for a temporary custody order. Following a custody conciliation conference on March 25, 2014, a custody master recommended granting the parties shared

legal custody and granting Mother primary physical custody of Child. On April 16, 2014, Father filed a demand for trial. On February 26, 2015, however, the parties entered an agreed order for custody, which gave the parties shared legal custody and gave Mother primary physical custody.

On March 7, 2016, Father filed a petition to modify custody. The parties attended a custody conciliation conference on April 19, 2016, and on April 26, 2016, a custody master recommended that the parties share legal custody and Mother have primary physical custody of Child. In the spring of 2017, Father returned to Pennsylvania from California, and on May 12, 2017, Father filed another petition to modify custody. On July 5, 2017, following a custody conciliation conference, a custody master again recommended that the parties share legal custody and Mother have primary physical custody.

On November 14, 2017, Father filed the current petition to modify custody. After the parties attended a custody conciliation conference on January 23, 2018, a custody master recommended giving the parties shared legal custody and giving Mother primary physical custody. On January 24, 2018, Father filed a demand for a trial. The court held a two day custody trial on May 15-16, 2018. On May 17, 2018, the court entered a custody order granting the parties shared legal custody and granting Mother primary physical custody of Child. The order also directed that Holcomb Behavioral Health Systems remain Child's behavioral health provider. On June 15, 2018, Father timely filed notice of appeal and a contemporaneous concise statement

of errors complained of on appeal pursuant to Pa.R.A.P. 1925.

Father raises seven issues for our review:

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY RULING THAT A FATHER WHO IN THE PAST MOVED OUT OF STATE FOR EMPLOYMENT REASONS, BUT HAS RETURNED, IS NOT ELIGIBLE FOR JOINT PHYSICAL CUSTODY OF HIS CHILD IN THE FORESEEABLE FUTURE, WITHOUT REFERENCE TO OR CONSIDERATION OF THE BEST INTEREST OF [CHILD] AND WITHOUT REFERENCE TO OR CONSIDERATION OF ANY OF THE FACTORS REQUIRED TO BE CONSIDERED BY 23 PA.C.S.A. § 5328(A)[?]

WHETHER THE TRIAL COURT…ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY CONDITIONING AN AWARD TO FATHER OF ADDITIONAL TIME WITH [CHILD] ON FATHER'S WILLINGNESS AND ABILITY TO BUY A HOUSE, WITHOUT REFERENCE TO OR CONSIDERATION OF THE BEST INTEREST OF…[CHILD] AND WITHOUT REFERENCE TO OR CONSIDERATION OF ANY OF THE FACTORS 23 PA.C.S.A. § 5328(A)[?]

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY FAILING TO AWARD JOINT PHYSICAL CUSTODY IN THE FACE OF EVIDENCE AT THE HEARING SHOWING THAT THE PRESENT AWARD OF PRIMARY PHYSICAL CUSTODY TO MOTHER CREATES INTENSE PRESSURE ON [CHILD] AND IS NOT IN [CHILD'S] BEST INTEREST[?]

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY FAILING TO TAKE INTO ACCOUNT THE BIAS EVIDENCED IN THE WRITTEN REPORTS AND TESTIMONY OF HOLCOMB'S REPRESENTATIVE[?]

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY REQUIRING THE PARTIES TO CONTINUE TO EMPLOY HOLCOMB AS THE EXCLUSIVE BEHAVIORAL SERVICE PROVIDER FOR [CHILD], THEREBY PREVENTING FATHER FROM EXERCISING HIS JOINT LEGAL CUSTODY RIGHTS TO OBTAIN A SECOND OPINION, OR AN ALTERNATIVE BEHAVIORAL SERVICE

PROVIDER[?]

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY FAILING TO TAKE INTO ACCOUNT MOTHER'S DISHONESTY REGARDING PAYMENTS TO HER PARENT FOR DAYCARE[?]

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY NOT GRANTING ADDITIONAL DAYS TO FATHER WITH [CHILD] DURING THE SCHOOL YEAR AND VACATION PERIODS, WHEN THE INVOLVEMENT OF BOTH PARENTS IS ESSENTIAL TO…CHILD, AND WHERE A SMALL NUMBER OF ADDITIONAL DAYS FOR FATHER WITH [CHILD] WOULD BE IN THE BEST INTEREST OF…CHILD BY CREATING JOINT PHYSICAL CUSTODY[?]

(Father's Brief at 9-10).

Our scope and standard of review of a custody order are as follows:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it…. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination…. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

\* \* \*

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate

- 4 -

interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa.Super. 2014) (quoting ***R.M.G., Jr. v. F.M.G.***, 986 A.2d 1234, 1237 (Pa.Super. 2009)).

"A party seeking modification of custody arrangements has the burden to show that modification is in the child's best interest." ***Johns v. Cioci***, 865 A.2d 931, 937 (Pa.Super. 2004). Additionally, the Child Custody Act ("Act") provides:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). "The court shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). In expressing the reasons for its decision, "there is no required

amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013). A court's explanation of the reasons for its decision, which adequately addresses the relevant custody factors, complies with Section 5323(d). ***Id.***

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Patrick Carmody, we conclude Father's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (***See*** Trial Court Opinion, filed July 9, 2018, at 2-9) (finding: **(1, 3, 7)** Father relocated to California in May 2013, when Child was 2 years old, and returned to Pennsylvania in 2017; while Father was away, Mother raised Child as single parent and Father saw Child approximately 3 times per year; Child has substantial behavioral issues and conflict between parties has negative effect on Child's behavior; Child receives behavioral services from Holcomb Behavioral Health Systems ("Holcomb"); Behavioral Specialist Consultant ("BSC") assigned to Child's case reported Child's behavior deteriorated when Father returned from California; Mother and Child's teachers also noticed Child is "off" after visit with Father; Mother and Father run their respective households differently, which negatively affects Child, who does better in structured environment; Father has resisted BSC's recommendations that

Father have more structured schedule and implement strategies which work for Child; BSC opined Father lacks parenting skills and does not have emotional connection with Child; BSC also observed Child's increased frustration and anger are result of behavior Child observes at Father's home, as well as adjustment to splitting time between both parents' homes; Father had no interest in working with Holcomb until issue of cooperation with Holcomb was addressed in court; Father contacted Holcomb for first time in December 2017 and did not meet with Holcomb until January 2018, even though Father had been back in Pennsylvania since spring of 2017; Child reported to BSC that Father hits him "hard" on cheek when he is in trouble; although litigation between parties has adverse effect on Child, Father repeatedly files for modification of custody; court believes Father is more concerned with winning and reducing child support obligation than he is with Child; evidence demonstrated Father has attempted to barter with Mother to have her waive Father's child support obligations; in consideration of 16 custody factors and totality of circumstances, it is not in Child's best interest to grant Father shared physical custody; rather, it is in Child's best interests for Mother to retain primary physical custody; **(2)** Father's claim that court conditioned award of additional time with Child on Father's willingness and ability to buy house is not true; court made clear at trial that whether Father purchased home would have no effect on custody; custody order also does not condition Father's custody time on Father purchasing home; **(5)** regarding

Father's argument that court erred by requiring parties to continue to employ Holcomb, custody order does not prevent Father from obtaining second opinion or alternative behavioral service provider; order merely stops one party from unilaterally terminating Holcomb's services; **(4)** court disagrees with Father's assertion that BSC is biased against Father; rather, BSC is merely frustrated with Father's insistence on using his own parenting techniques and his refusal to implement her suggestions; **(6)** regarding Father's claim that Mother was dishonest about payments to her mother for daycare services for Child, court acknowledges there was some discrepancy concerning whether Child's maternal grandmother was paid for providing child care services to Child; whether Child's grandmother was paid, however, has no bearing on custody determination). Accordingly, we affirm based on the trial court's opinion.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/18

S. A.

vs.

K. A.

: IN THE COURT OF COMMON PLEAS

: CHESTER COUNTY, PENNSYLVANIA

: CIVIL ACTION - LAW

: NO. 2013-12558

: IN CUSTODY

Randi J. Vladimer, Esquire, Attorney for Plaintiff/Mother
Scott D. Godshall, Esquire, Attorney for Defendant/Father

## OPINION PURSUANT TO Pa.R.C.P. 1925

Defendant/Father, K. A. has appealed from the Custody Order entered in this matter on May 17, 2018. This Opinion is filed pursuant to Pa.R.A.P. 1925(a).

The parties have one minor child, A.A. (date of birth 2/ /11). Following a two-day custody trial on May 15-16, 2018, the court entered an Order giving the parties joint legal custody of the child. After considering all of the evidence and all relevant factors, Mother was awarded primary physical custody and Father was awarded partial physical custody. Specifically, Father has custody every other weekend from Friday until Monday, every Wednesday night until Thursday, and every other week during the summer. Father has appealed this Order, claiming:

1. The Court abused its discretion and committed reversible error by ruling that a father who in the past moved out of state for employment reasons is not eligible for joint physical custody of his child upon his return;

2. The Court abused its discretion and committed reversible error by failing to award joint physical custody in the face of evidence at the hearing showing that the present

award of primary physical custody to Mother creates intense pressure on their son and is not in his best interest;

3. The Court abused its discretion and committed reversible error by failing to take into account the bias evidenced in the written reports and testimony of Holcomb's representative;

4. The Court abused its discretion and committed reversible error by requiring the parties to employ Holcomb as the exclusive behavioral service provider for their child, thereby preventing Father from exercising his joint legal custody rights to obtain a second opinion, or an alternative behavioral service provider;

5. The Court abused its discretion and committed reversible error by failing to take into account Mother's dishonesty regarding payments to her parent for daycare;

6. The Court abused its discretion and committed reversible error by not granting additional days to Father with his son during the school year and vacation periods, when the involvement of both parents is essential to the child, and where a small number of additional days for Father with his son would be in the best interest of the child by creating joint physical custody; and

7. The Court abused its discretion and committed reversible error by conditioning an award to Father of additional time with his son on Father's willingness and ability to buy a house.

See Father's Concise Statement of Matters Complained of on Appeal. Although worded differently, most of Father's allegations of error focus on the fact that he was not awarded shared physical custody of the child.

"When a trial court orders a form of custody, the best interest of the child is paramount." S.W.D. v. S.A.R., 96 A.3d 396 (Pa. Super. 2014). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a), which states:

(a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a). In the instant case, the court considered each and every factor outlined above when determining what was in A.A.'s best interest. See N.T. 5/16/18, pp. 288-313.

During the hearing, the following facts were established: In May of 2013, when A.A. was two years old, Father relocated to California. He returned to Chester County in 2017. During the time he was away, Mother was basically a single parent. While Father saw A.A. approximately three times a year during this time period, Mother was the laboring oar in attending to A.A.'s daily needs during this very formative time of a child's life.

A.A. is a very smart child, but he has substantial behavioral issues. As a result, he receives services from Holcomb Behavioral Health Systems. A.A. seems to be responding well to the services provided by Holcomb, and his behavior has markedly improved since he first started receiving services from them. Unfortunately, there is a lot of conflict between his parents which has had a negative effect on his behavior. The Behavioral Specialist Consultant (hereinafter "BSC") assigned to his case has noticed that his behavior has gotten worse since Father returned from California. A.A.'s Mother, teachers and teacher's aides have also noticed that he is "off" after a visit with Father. See N.T. 5/16/18, p. 199, 200, 202; Exhibit P-13, pp. 65-66 of 148. Mother and Father run their households very differently, which is having a negative effect on A.A., who does better in a structured environment. The BSC has tried to talk to Father about having a more structured schedule and about implementing strategies that work with A.A., but Father is resistant to her suggestions. The BSC has noted the following:

> Clinical impression is that [A.A.] is not speaking freely when at father's house and his effect is low (lower than at school and mother's house). He appears to tolerate being in the environment but is not happy. [A.A.] is generally as (sic) very happy child. [Father] lacks parenting skills and doesn't seem to have an emotional connection with [A.A.]. BSC is bothered by continual suggestions of

using aversion techniques to parent [A.A.] however BSC continues to provide encouragement and information to help father change his approach.

\* \* \* \* \*

Father is very concerned that his involvement or lack of involvement may reflect poorly in regards to custody for his son. BSC cannot assess if [Father] cares for his son or if his main interest is himself, however [Father]'s behavior indicates lack of parenting skills and understanding as he does not seem overly concerned with the stress that the custody situation is having on [A.A.].

\* \* \* \* \*

[A.A.] is demonstrating increased frustration, anger and mild aggression. This has been observed by BSC and mobile therapist in both mother and father's home and BSC believes this is a result of behaviors that [A.A.] is observing in father's home as well as an adjustment to having to go back and forth from his mother and father's homes when he had previously always been in mother's home which is bigger, cleaner, has a big back yard, he has his own room and there is no yelling occurring. This is his preferred place to be and he is required to be with his father with whom he has a limited bond due to his father's previous absence.

See Exhibit P-13, p. 142 of 148, 124 of 148, and 147 of 148. After hearing all of the testimony, reviewing all of the documents, and observing both parents, the court agrees with the BSC's evaluations of the situation.

The court takes notice of the fact that Father did not seem to have any interest in contacting Holcomb or working with them to help A.A. until this point was raised in court. After the subject was brought up in court, he contacted Holcomb for the first time in December of 2017 and did not meet with them until January of 2018 even though he had been back in Chester County since Spring of 2017.

The court also acknowledges that A.A. has told the BSC that his father hits him on the cheek when he is in trouble. He explained that "he hits hard when I'm in trouble." See N.T. 5/16/18, pp. 213-214; Exhibit P-13 pp. 110-110 of 148.

Despite the fact that the litigation between Mother and Father is having an adverse effect on A.A., Father repeatedly files for Modification of Custody. He filed an Emergency Petition for Custody on March 5, 2014 while he still resided in California and has filed three Petitions to Modify since that time (March 7, 2016, May 12, 2017, and November 14, 2017). He is insistent that he have shared physical custody, and it appears that he will continue filing motions and litigating the issue unless and until he gets it, despite the fact that this is not in the child's best interest. The court is of the opinion that Father is more concerned for himself and with winning than he is for the child, a fact that became more and more evident throughout the custody trial.

The court believes that Father is motivated, at least in part, by his desire to reduce his child support obligation. This is evidenced by several text messages written by Father where he refers to child support payments. For instance, during a text message exchange between the parties on September 1, 2017, Mother informed Father that A.A. was feverish and she wanted to speak with him to see how he was doing. Instead of allowing A.A. to speak with his Mother, Father repeatedly responds, "waive my child support payments," and "waive my child support so I can buy him a house to stay properly." He also tells her "by not letting him live nicely you are not being a good mother," and "I can't afford a good house for him." See, e.g., Exhibit P-10. Further, the BSC noted that Father "expressed frustration at not having enough material possessions like [A.A.]'s mother." Exhibit P-13, p. 119 of 148. In addition, during the trial, Father stated the following:

> I want some kind of improvement plan where I should be financially given the same thing. He doesn't need to be biased towards mom. Mom will buy me toys, mom will take me on vacation. I want him to be equally to his dad too. How can I support if you are not going to empower me? How can I support my

son if you don't empower me? How can I act cool even if I - - I need the same kind of lifestyle.

N.T. 5/16/18, p 312. He does not seem to understand (and does not seem to want to hear) that his relationship with his son is not dependent on how much child support he pays or how much money he has. It is based on the relationship they have, and it will not improve if Father continues to ignore all the help and advice he receives on the best ways to communicate with his son. Quite frankly, Father likes to be in control, and he opposes anyone and anything that does not agree with the way he does things.

Applying the above facts to the sixteen (16) factors listed in 23 Pa.C.S. § 5328(a) and considering the totality of the circumstances, it is clear that it is not in A.A.'s best interest for the parties to have shared custody. To the contrary, it is in his best interest for Mother to have primary physical custody of the child.

The court notes that, despite Father's claim that the court conditioned an award of additional time with the child on Father's willingness and ability to buy a house, this is simply not the case. While the court asked about the status of Father buying a house (an issue which was raised by Father), it was also made clear that the court was just trying to understand the "bigger picture" and that whether or not Father purchased a house would have no effect on custody. N.T. 5/16/18, p. 286-87. This is confirmed by the court's Custody Order, which does not condition Father's custody time on Father purchasing a house.

Father also alleges that the court abused its discretion and committed reversible error by requiring the parties to employ Holcomb as the exclusive behavioral service provider for their child. He claims that having Holcomb provide services prevents Father "from exercising his joint legal custody rights to obtain a second opinion, or an alternative behavioral service

provider." The Order does no such thing. It merely notes that, "due to the longstanding relationship and success Holcomb Behavioral Health has had with A.A., Holcomb Behavioral Health will remain as the behavioral health service provider for the child." See Order dated 5/17/18. This language does not limit the parties from exploring other options or obtaining a second opinion as long as both parties agree to same. It merely stops one party from unilaterally terminating Holcomb's services without the consent of the other party.

The court notes that Father believes Holcomb is biased against him. The court disagrees with Father's opinion of Holcomb and does not believe it is biased against him. The court believes that the BSC is merely frustrated with Father's refusal to implement any of her suggestions and insists on doing things the way he wants, even though his techniques do not work with A.A. The court can understand Holcomb's frustrations, as the court witnessed Father's unwillingness to listen to anyone else during the trial of this matter. Father's need to control every situation and have things done the way he wants them is detrimental to his relationship with his son. When others try to help him, he ignores what they have to say and continues doing things the way he wants, even though his ways are not in A.A.'s best interest.

Finally, Father claims that the court abused its discretion and committed reversible error by failing to take into account Mother's dishonesty regarding payments to her mother for daycare services. The court acknowledges that there were some discrepancies with regard to whether A.A.'s maternal grandmother was paid for providing child care services to A.A.. This fact, however, has no bearing on the question of custody, which was the sole matter to be decided by the court. While it may be relevant in determining child support obligations, this

issue was not presently before the court. Accordingly, the court properly gave this evidence the weight it deserved based on the issues to be decided.

Based on the foregoing, the court finds that each of Father's alleged assignments of error are without merit and respectfully requests the Pennsylvania Superior Court to affirm the trial court's Custody Order dated May 17, 2018.

BY THE COURT:

_____7/9/18_____
DATE

_____
PATRICK CARMODY          J.