J-A08030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| D.A. | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.A. | : | |
| | : | |
| Appellant | : | No. 1571 WDA 2018 |

Appeal from the Order Entered October 10, 2018
In the Court of Common Pleas of Mercer County
Civil Division at No:  2017-1001

BEFORE:  PANELLA, P.J., STABILE, and McLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.:                **FILED  JUNE 19, 2019**

A.A. ("Father") appeals from the order entered on October 10, 2018, in the Court of Common Pleas of Mercer County, denying his request to relocate the parties' three minor children to Orlando, Florida.  After careful review, we affirm.

Father and D.A. ("Mother") have two daughters, M.A., born in December of 2006, and L.A., born in December of 2009, and one son, A.A., born in February of 2012 (collectively, "the Children").  The family moved to Mercer County, Pennsylvania in approximately January of 2016, following Father's honorable discharge from the United States Navy.  N.T., 8/30/18, at 26; N.T., 9/7/18, at 11.  Prior to moving to Pennsylvania, the family lived in Okinawa, Japan; Norfolk, Virginia; and Pensacola, Florida.  N.T., 8/30/18, at 26-27.

Mother initiated a divorce action in March of 2017. On July 24, 2017, Father was granted a Protection from Abuse ("PFA") order issued against Mother, which granted him exclusive possession of the marital residence.[1] Trial Court Opinion, 3/14/18, at ¶¶ 2, 5. In addition, as a result of the PFA order, Father was granted primary physical custody of the Children and Mother partial physical custody one evening per week and on alternating weekends. Trial Court Opinion, 3/14/18, at ¶¶ 3-4. However, following an evidentiary hearing, the trial court awarded the parties shared legal and physical custody on an alternating weekly basis by order dated March 14, 2018, in which it assessed the best interest factors set forth in 23 Pa.C.S. § 5328(a).[2]

Soon thereafter, on July 25, 2018, Mother filed a counter-affidavit wherein she objected to Father's proposal to relocate the Children and to modify the custody order. The trial court held a relocation hearing on August 30, 2018, and September 7, 2018, during which Father and Mother testified. In addition, the court interviewed the Children *in camera* in the presence of the parties' counsel.[3]

---

[1] The PFA order expired on April 24, 2018. Trial Court Opinion, 3/14/18, at ¶ 5.

[2] The Honorable Daniel P. Wallace presided over the custody hearing and the relocation hearing, which occurred approximately five months apart.

[3] The trial court had also conducted *in camera* interviews of the Children during the custody proceeding.

The testimonial evidence revealed that the parties sold their marital residence in July of 2018. Father had been living at a Marriott hotel in Mercer County since that time. Trial Court Opinion, 10/10/18, at ¶ 8. The parties' divorce "was finalized on September 7, 2018." *Id.* at ¶ 2.

Father testified that, on July 31, 2018, his position with a community mental health center in Pennsylvania was terminated. N.T., 8/30/18, at 27-28. He explained that he "ran the diagnostics program assessing children for neurodevelopmental disorders; autism, AD/HD [sic], traumatic brain injury, things of that nature." *Id.* at 27. In that position, Father earned $125,000. *Id.* at 28. Father testified that he sought new employment in Pennsylvania, but he was unable to secure a position with an equivalent salary. *Id.* at 30-33.

Father testified that he will relocate to Orlando, Florida because he entered into a one-year employment contract with an agency in Florida that serves mental health needs of residents in nursing homes. *Id.* at 38, 60. Specifically, he testified that he was "hired to go into the training program to be the regional director for mental health in nursing homes from Merritt Island down to Boca Raton." *Id.* at 38. Father testified that the base salary is equivalent to his former position in Pennsylvania, and there is the potential for higher income. *Id.*

In addition, Father testified that neither he nor Mother has any extended family in Pennsylvania or in eastern Ohio. *Id.* at 29. Rather, Father's parents,

brother, and other extended family live in Florida. *Id.* at 35-36. Similarly, Mother testified that her mother and two brothers live in Florida. N.T., 9/7/18, at 18.

By the time the hearing concluded on September 7, 2018, Father had an offer pending on a single family home in the Orange County School District in Orlando. N.T., 9/7/18, at 3-4. He explained that there are "two other rentals in the area, and there [are] also two other housing apartment complexes, so finding housing will not be a problem." *Id.* at 3.

M.A., the oldest child, then age eleven and in sixth grade, testified during her *in camera* testimony that she was aware of Father's relocation plan and that Father had taken her and her siblings with him to Florida "a few times" recently. N.T., 8/30/18, at 3, 5. M.A. testified that she wished to reside with Mother during the school year and with Father during the summer. N.T., 8/30/18, at 3, 7-8. Similarly, L.A. and A.A., then ages eight and six, testified that they preferred to reside with Mother during the school year and with Father during the summer and on holidays. *Id.* at 13-14, 17, 20-21. On inquiry by Father's counsel, L.A. remarked that being in Father's custody is "a little bit uncomfortable because when we fight my dad doesn't really do anything." N.T., 8/30/18, at 17. L.A. continued:

Q. When who fights, when you and your brother and sister fight?

A. Yeah.

Q. He lets you work it out on your own, he doesn't interfere?

- 4 -

A. He just yells at us, that's all he really does.  Other than that[,] he doesn't really do anything else.

*Id.*

By order dated October 5, 2018, and entered on October 10, 2018, the trial court denied Father's relocation request and maintained shared legal custody between the parties.  The court awarded Mother primary physical custody and Father partial physical custody for two months during the summer, and it directed that the parties alternate physical custody on holidays.

Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  In lieu of filing a Rule 1925(a) opinion, the trial court relied upon its opinion that accompanied the subject order.

On appeal, Father presents the following issues for our review:

1.     Did the [t]rial [c]ourt err and abuse its discretion in denying Father's request to relocate with his minor children from Grove City, Mercer County[,] Pennsylvania to Orlando, Florida in that it disregarded the weight of the evidence when considering the relocation factors[?]

2.     Did the [t]rial [c]ourt err and abuse its discretion in disregarding the fact that Father had primary physical custody of the [C]hildren for seven and one half months following the entry of a [PFA] order against Mother and [shared] physical custody for five and one half months prior to his move to Florida[?]

3.     Did the [t]rial [c]ourt err and abuse its discretion in finding that granting the requested relocation would adversely impact the [C]hildren's emotional development without any formal evidence to support that assertion and despite a contradictory finding that the [C]hildren are well adjusted and mature[?]

4.      Did the [t]rial [c]ourt err and abuse its discretion in placing undue weight on the very brief testimony of the oldest child, M.A., age 11[?]

Father's brief at 7-8.

We review Father's issues according to the following scope and standard of review:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . .  However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . .  Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa. Super. 2001)).  Moreover,

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

> The parties cannot dictate the amount of weight the trial court places on evidence.  Rather, the paramount concern of the trial court is the best interest of the child.  Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr., supra* at 1237 (internal citations omitted).  The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014). In addition,

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer*, *supra* at 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004).

Section 5337 of the Child Custody Act, 23 Pa.C.S. § 5321 *et seq*. ("the Act"), sets forth the procedures and standards for relocation requests. The Act requires the trial court to consider the following in a relocation proceeding:

> **(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

Moreover, the party proposing relocation has the burden to prove that relocation will serve the child's best interest. 23 Pa.C.S. § 5337(i). Each party, however, has the burden of establishing "the integrity of that party's

motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S. § 5337(i)(2).

On appeal, Father's issues are interrelated, and so we review them together. Father asserts that the court erred and abused its discretion in misapplying the relocation factors and reaching an unreasonable result, which is unsupported by the record evidence. Based on a thorough review of the record and the Section 5337(h) relocation factors, discussed *infra*, we conclude that Father did not meet his burden of proving that relocation was in the Children's best interest.

Specifically, Father argues the court abused its discretion in failing to find that he has been the more stable and involved parent over the past year. He argues the court erred in failing to place any weight on the expired PFA order against Mother. Further, Father asserts that the court ignored evidence that Mother is angry with him because of the PFA order. He refers this Court to his testimony that, approximately one week after the PFA order expired, Mother made an unfounded report against him to Children and Youth Services for neglect and abuse of the Children. N.T., 8/30/18, at 44-46. Further, Father refers us to testimony where he alleged that Mother refused on two occasions to take the Children to doctor appointments during his custodial periods. *Id.* at 29-30.

Father emphasizes that the Children have moved frequently with him and Mother while he was in the U.S. Navy, and that they "have generally

adapted well to each new home." Father's brief at 16. He argues there is no evidence that the Children have any physical, educational, developmental or special needs that would be exacerbated by the relocation. Importantly, contrary to the court's findings, Father argues there is no evidence that there would be an adverse impact upon the Children's emotional development by the relocation. He asserts there was no record evidence that the Children "were suffering from any emotional trauma caused by their parents['] divorce that impacted their academic or personal life." Father's brief at 22. Father further asserts that the Children have had "adequate time to adjust to residing in two different households." *Id.*

Moreover, Father argues that the trial court's interviews of the Children were superficial and uninformative, and the court "should have engaged in a more comprehensive inquiry of the [C]hildren's position and reasons supporting it." *Id.* at 18. Father argues that the court placed undue weight on the preference of M.A., the oldest child.

Finally, Father asserts the court disregarded evidence that the Children's quality of life would be enhanced by the relocation due to the parties' extended families who live in Florida. In addition, he asserts that the Orlando area and proximity to Disney World would provide greater opportunity for the Children. Specifically, Father asserts that it would benefit M.A., who is interested in musical theater, and A.A., who could play sports all year round in Florida.

Upon review, the trial court delineated each of the ten relocation factors and provided an analysis under each factor in its opinion that accompanied the subject order. **See A.V.**, 87 A.3d at 822-823 (citations and quotations omitted) (stating that the Act requires courts to consider all relocation factors set forth in Section 5337(h) on the record in open court or in a written opinion or prior to the deadline by which a litigant must file a notice of appeal).

The court found that, until the issuance of the PFA order,[4] Mother was the primary caregiver of the Children. Father was always active in the upbringing of the Children, and, for nearly eight months, from July 24, 2017 until March 14, 2018, he was granted primary physical custody and Mother partial physical custody. Thereafter, for approximately five months prior to the commencement of the relocation hearing, the parties shared physical custody on an alternating weekly basis. The court found that the Children are well-adjusted; nevertheless, they "recently went through one of the most stressful experiences a child can go through, their parents['] divorce." Trial Court Opinion, 10/10/18, at 3 (unpaginated). Therefore, the court concluded, "relocation so soon after the divorce will adversely impact their emotional development in this respect because of the separation from Mother." **Id.**

---

[4] Because the PFA order was entered against Mother during the dissolution of the parties' marriage and had expired by the time of the relocation hearing, the court afforded it little weight. Trial Court Opinion, 10/10/18, at 5; **see also** 23 Pa.C.S. § 5337(h)(9).

The court noted that M.A., during her *in camera* interview, "unequivocally and without hesitation" stated that she wished to live with Mother. Trial Court Opinion, 10/10/18, at 3 (unpaginated). Likewise, L.A. and A.A. stated their preferences unequivocally. The court afforded considerable weight to the Children's uniform preference to live with Mother. *See* 23 Pa.C.S. § 5337(h)(4).

Further, the court found that Father is relocating 877 miles away, and that "[a]ny custody arrangement with the Children will be limited to holidays and summers." *Id.* The court determined that the cost of transporting the Children "by airplane from Orlando to Pittsburgh two times a year will be considerable to Mother." *Id.*; *see also* 23 Pa.C.S. § 5337(h)(3).

Importantly, the court found that neither party has engaged in a pattern of conduct to promote or thwart the relationship of the Children and the other party. *See* 23 Pa.C.S. § 5337(h)(5). In addition, the court determined, "Father's reason and motivation for relocation [is] sincere and legitimate. He is unable to find suitable employment in western Pennsylvania. If he had, he would remain in western Pennsylvania. Likewise, . . . Mother's reasons and motivation for opposing the relocation [are] sincere and legitimate. She has her job . . . .,[5] and her ability to exercise her custodial rights would be

_____

[5] Mother testified that she recently obtained a promotion at her place of employment, where she has worked for two years. N.T., 9/7/18, at 11-12. Mother did not testify with respect to her job duties, but she testified, "I don't

- 12 -

significantly impaired if relocation were to occur." Trial Court Opinion, 10/10/18, at 4-5; *see also* 23 Pa.C.S. § 5337(h)(8).

While the court found that the relocation will enhance Father's general quality of life because of his employment opportunity and extended family who live in Florida, it found that relocation will not enhance the Children's general quality of life. Rather, the court concluded that the Children "would suffer greatly emotionally being separated from their Mother." Trial Court Opinion, 10/10/18, at 4 (unpaginated); *see also* 23 Pa.C.S. § 5337(h)(6)-(7).

Finally, the court found that "some of Father's testimony reflected a lack of anger management control. This corroborates L.A.'s testimony that 'Dad yells a lot.'" *Id.* at 5 (unpaginated); *see also* 23 Pa.C.S. § 5337(h)(10). Based on its analysis of the relocation factors, the trial court concluded that Father did not meet his burden of establishing that relocation was in the Children's best interest.

Upon review, the trial court's consideration of the Children's best interest was careful and thorough. The court based its decision on credibility and weight of the evidence determinations. Because the trial court observed the proceedings and demeanor of Father, Mother, and the Children in the

---

do what I used to do." *Id.* at 12. At the time of the custody hearing in March of 2018, Mother worked in customer assistance for the Office of Personnel Management. Trial Court Opinion, 3/14/18, at ¶ 15. Mother acknowledged that she now makes more money and has more job security. *Id.* at 12.

subject proceeding, as well as in the custody hearing approximately five months earlier, and its findings are supported in the record, we conclude that the trial court did not err or abuse its discretion. *See A.V.*, 87 A.3d at 820 (citation omitted). Therefore, we do not disturb the order denying Father's relocation request.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/19/2019