J-A21004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| H.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.S. | : | No. 777 EDA 2020 |

Appeal from the Order Entered February 11, 2020
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): No. 0C1902002

BEFORE: LAZARUS, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 09, 2020**

H.S. appeals from the trial court's order granting her partial physical custody of her minor grandchildren, J.J.R. and D.E.R. (collectively, Children), and granting A.S. (Mother) primary physical and sole legal custody of Children. After careful review, we affirm.

H.S. is the paternal grandmother of J.J.R. (born 2/13) and D.E.R. (born 2/16).[1] Mother[2] and J.R. (Father), H.S.'s son, are Children's biological parents. In March 2019, Father passed away unexpectedly. At the time of Father's death, Children were living with their paternal aunt and paternal

---

[1] H.S. also has a daughter, S.S., who was 16-years-old at the time of the custody hearing.

[2] Mother has not filed a brief on appeal.

grandfather. Maternal grandmother and maternal grandfather live in Philadelphia and New Jersey, respectively. Mother's extended family also lives in New Jersey. Father's extended family lives in the Philadelphia area.

D.E.R. has special needs and is on the autism spectrum. Children, Mother and Father lived with H.S. for several years, off and on, beginning when J.J.R. was seven-months-old. For approximately two years preceding Father's death, H.S. did not have contact with Children. Following Father's passing, Mother resumed limited contact with H.S. On October 7, 2019, Mother traveled to London, England, with Children on a 6-month visa; she originally intended to stay in London for three to four weeks. However, after living in England for a few months, Mother decided to renew her visa and permanently reside in the U.K. After the move to London, H.S. began posting comments on social media regarding Mother being responsible for Father's death.[3] As a result, Mother terminated contact with H.S.

On October 31, 2019, H.S. filed a complaint seeking partial physical custody of Children. On November 25, 2019,[4] the parties attended a master's hearing on the matter. When the parties could not reach an agreement, the

---

[3] The trial court found Mother credible on this issue, concluding that "[H.S.] utilized social media to infer that Mother was not acting in Children's best interests . . . [and] determined that there is a moderate level of conflict between the parties." Order, 2/11/20, at 3.

[4] H.S. found out Mother wanted to move permanently to England at the masters hearing.

matter was continued. On January 28, 2020, a trial judge held a custody hearing where H.S. and Mother[5] testified.

After determining that H.S. has standing to seek custody pursuant to 23 Pa.C.S. § 5325(1), the court assessed the 16 custody factors under 23 Pa.C.S. § 5328(a) and additional custody considerations set forth in 23 Pa.C.S. § 5328(c), and granted H.S. partial physical custody of Children and Mother primary physical and sole legal custody. The court's custody order provides for in-person contact between H.S. and Children when Mother is in the Philadelphia area or H.S. is in England,[6] and for ongoing, weekly remote contact between H.S. and Children though FaceTime.[7]

On March 3, 2020, H.S. filed a notice of appeal. She also complied with the trial court's directive and filed a timely Pa.R.A.P. 1925(b) concise

_____

[5] Mother participated in the hearing telephonically.

[6] When Mother and Children are in the Philadelphia area for at least three to six days, H.S. has Children for six consecutive hours at a place to be agreed upon and arranged by the parties. If Mother and Children are in the Philadelphia area for more than six days, H.S. has partial physical custody for two periods of six consecutive hours a week at an agreed upon place. If H.S. travels to England, she has Children for two periods of six consecutive hours a week.

[7] Other paternal family members may participate in H.S.'s FaceTime calls with Children. Moreover, the court's order notes that if the parties cannot agree with regard to the time of the calls, "[H.S.] may have contact with Children through FaceTime *every Saturday at 1:00 P.M. Philadelphia time*." Order, 2/11/20, at 2 (emphasis added).

statement of errors complained of on appeal. She raises the following issues

for our consideration:

> (1) Did the [c]ourt err by not entering a fixed custody schedule for [H.S.] to see [C]hildren?
>
> (2) Is it in the best interest of [C]hildren to neglect the paternal side of [C]hildren's family?
>
> (3) Did the[c]ourt err by incorrectly stating in section 4 of the February 11, 2020 [o]rder, under the analysis of 23 Pa.C.S. [§] 5328(c)(1)(I)[,] that there was no contact with [H.S.?][8]
>
> (4) Did the [c]ourt [o]rder err by not specifying a meeting place, specifying a notification process if Mother was to visit Pennsylvania or [H.S.] to visit [C]hildren in England, specifying Mother's address[,] as [H.S.] does not know where she resides?
>
> (5) Did the [c]ourt err by not exercising its discretion to require Mother to travel with a set frequency to Philadelphia with [C]hildren?

Appellant's Brief, at 17-18.[9]

_____

[8] To the extent that H.S. contends the trial court erred in concluding that there had been a lack of contact between H.S. and Children for two years, we find no error. The court explained that it found Mother's testimony credible on the issue of the two-year period of no contact preceding Father's death. *See* Trial Court Opinion, 4/16/20, at 6; *see also* N.T. Custody Hearing, 1/28/20, at 34.

[9] In her Rule 1925(b) concise statement, H.S. also included two issues regarding the court denying her standing in this custody matter. She, however, has abandoned them in her appellate brief, presumably because the court did determine she had standing pursuant to 23 Pa.C.S. § 5325(1) which grants standing, for partial physical or supervised physical custody, to grandparents or great-grandparents "where the parent of the child is deceased." *Id.*

The Child Custody Act provides that grandparents may file an action for partial physical custody or supervised physical custody in certain situations, including where the parent of the child is deceased. *See* 23 Pa.C.S. § 5325(1). The burden is on the grandparents to demonstrate that partial custody or visitation in their favor is in the grandchild's best interest and will not interfere with the parent-child relationship. ***D.R.L. & D.L. v. K.L.C. & J.C.***, 216 A.3d 276, 279 (Pa. Super. 2019) (citation omitted). "The paramount concern in custody cases, 'including those in which grandparents are seeking rights, is the best interests of the child.'" ***Id.*** "A determination of the best interests of the child is based on consideration of all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." ***Id.***

Section 5328(a) of the Child Custody Act enumerates sixteen factors that the court must consider when making an order of custody. 23 Pa.C.S. § 5328(a). In addition to the 16 factors a court must consider under section 5328 when ordering any form of custody, a court must also consider the following factors when awarding grandparents partial physical custody under section 5325(1):

> **(c) Grandparents and great-grandparents.—**
>
> **(1)** In ordering partial physical custody or supervised physical custody to a party who has standing under section 5325(1) or (2) (relating to standing for partial physical custody and supervised physical custody), the court shall consider the following:

(i) the amount of personal contact between the child and the party prior to the filing of the action;

(ii) whether the award interferes with any parent-child relationship; and

(iii) whether the award is in the best interest of the child.

23 Pa.C.S. § 5328(c)(1). The trial court does not have to give a "required amount of detail" when it explains a custody award; all that is necessary is that the enumerated factors are considered and that the court's custody decision is based on those considerations. *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013).

In custody cases, the relevant scope and standard of review are as follows:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it[.] However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination[.] Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (citation omitted). "[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *Id. See Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) ("The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the

special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned.") (citation omitted).

On appeal, the bulk of H.S.'s claims revolve around the fact that the trial court's custody order does not set a specified schedule for visits with Children. H.S. argues that the trial court erred by crafting a "highly vague" custody order that uses "conditional language" and does not designate "a time, meeting place, schedule[,] or notification process to arrange a [visit]." Appellant's Brief, at 25, 26.  H.S. claims that this custody arrangement is not in the best interest of Children and goes against the clear legislative intent of section 5328.  Finally, she asserts that the court should have required Mother to travel to the Philadelphia area at designated times (i.e., holidays or periods over summer) in order to ensure she visits with Children—especially where Mother has admitted to interfering with H.S.'s ability to communicate with Children and where "the parties have *high levels* of conflict."[10]  Appellant's Brief, at 39 (emphasis added).

Instantly, the trial court set forth its findings regarding all sixteen custody factors listed in section 5328(a) when it entered its custody order. **See** Order, 2/11/20, at 2-6; **see also** 23 Pa.C.S. § 5323(d) (trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order.").  The court noted that Mother is a "fit," capable and

---

[10] **See supra** n. 3 (trial court determined that "there is a *moderate level* of conflict between the parties)."  Order, 2/11/20, at 3 (emphasis added).

competent parent to Children, is "in the process of establishing a new life for herself and [C]hildren in England[, and] . . . has the right to make [important] decision[s] as [C]hildren's sole parent." Order, 2/11/20, at 2-4. The trial judge also concluded that: there was no evidence that Mother had attempted to turn Children against H.S.; H.S. did not contest that Mother should have primary physical custody; Mother is more likely to maintain a loving, stable, consistent and nurturing relationship with Children to meet their needs; and Mother is more likely to attend to Children's daily physical, emotional, developmental, and educational needs. *Id.* at 5.

Mother testified at the custody hearing that Children "need to know [their] father's side of the family," acknowledged that "[Children] should be in [H.S.'s] life," but also realized that she "can[no]t promise timelines . . . [and] is not certain of months, exact weeks, and exact times" when she could travel to the United States and visit with H.S. N.T. Custody Hearing, 1/28/20, at 34-35. The court concurred with Mother's assessment and concluded that H.S. did not meet her burden of proving that Children's best interests would be served by requiring Mother to visit the Philadelphia area on set dates to visit with H.S. and Father's family. *See* Trial Court Opinion, 4/16/20, at 6.

With regard to H.S., the court noted that "the actions of H.S. are consistent with a genuine desire on her part to maintain the Children's relationship with their paternal relatives." Order, 2/11/20, at 5. As for the distance between the parties, the court noted "[t]he parties live thousands of miles apart — [H.S.] does not contend that Mother should not have primary

physical custody[—] . . . [t]hus, "[t]h[ese] circumstances preclude[] the Children from having frequent physical contact with [H.S.]." *Id.* Finally, and most notably, the court found that where "Mother . . . is presumed to be fit, her decision to move to England was made in the Children's best interests [and n]o evidence was presented such that the presumption in favor of Mother has been rebutted." *Id.*

Here, where the court determined that Mother's move to London was in Children's best interests and that the significant distance between the parties prevents Children from having frequent contact with H.S., the trial court placed a legal obligation on Mother to allow H.S. to visit with Children in either the Philadelphia area or England when the parties were nearby to one another. Although the court's order did not compel Mother to bring Children to the Philadelphia area on given dates or periods of the calendar year, it did take into account the fact that "[t]he court [did] not presume that Mother would not comply with the terms of the order" and noted that "implicit in the terms of the [custody] order is that Mother will provide [H.S.] with her current address in England." Trial Court Opinion, 4/16/20, at 6. The court's schedule also "afford[ed] Mother latitude to establish patterns[,] in the [C]hildren's best interest[,] in their new home environment [in England], within the context of the probability of Mother[] visiting the Philadelphia area at some time to see her own family and friends." *Id.* Finally, the court recognized that when Mother does visit her family in the United States, "H.S., and by extension

other paternal relatives, are afforded the opportunity to see [C]hildren under the terms of the February 11, 2020 [custody] order." *Id.*

Viewing the record as a whole, including the notes of testimony from the custody hearing, as well as the trial court's order and opinion, we conclude that the trial court's factual findings support its conclusions. *R.M.G., Jr.*, *supra*. Moreover, with regard to the credibility of the parties, we defer to the findings of the trial judge who had the opportunity to observe the proceedings and the witnesses' demeanor. *Id.* The court's decision to give Mother the discretion to decide when Children visit the Philadelphia area was in the best interests of the Children where they are establishing new roots in a foreign country and Mother has been deemed a fit and capable parent. H.S. and paternal relatives can still see and communicate weekly with Children via FaceTime or other video calling applications when Mother and Children are in England. Moreover, H.S. is not prevented from traveling to London to visit with Children. Accordingly, we find no abuse of discretion; the court's conclusions are reasonable. *Id.*

Order affirmed.[11]

_____

[11] As the parties mentioned at the custody hearing, we are uncertain as to when and if the Court of Common Pleas of Philadelphia County will lose exclusive, continuing jurisdiction over the instant custody matter where Mother's initial 6-month visa expired in April 2020, and she intends to permanently reside in the U.K. *See* N.T. Custody Hearing, 1/28/20, at 45 ("And the — the practical and realist[ic] concern is that in a few months Philadelphia essentially will lose jurisdiction."); *see also* 23 Pa.C.S. §

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/9/20

_____

5422(a)(1) (court of Commonwealth that has made child custody determination relating to initial child custody jurisdiction has exclusive, continuing jurisdiction over determination until "court of this Commonwealth determines that neither the child, nor the child and one parent . . . have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships"); *id.* at § 5422(a)(2) (court of Commonwealth that has made child custody determination relating to initial child custody jurisdiction has exclusive, continuing jurisdiction over determination until "court of this Commonwealth or a court of another state determines that the child [and] the child's parents do not presently reside in this Commonwealth").